**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 11 |
| Sky Ventures, LLC | Case No. 14-_____ |
| Debtor. | |

**AFFIDAVIT OF BARRY M. ZELICKSON IN SUPPORT OF CERTAIN FIRST DAY PLEADINGS AND PAPERS**

STATE OF MINNESOTA   )
                     )   :
COUNTY OF HENNEPIN   )

On this date, the undersigned authority personally appeared before me, and, after being duly sworn, upon his oath, he deposed and stated as follows:

1. My name is Barry M. Zelickson. I am over twenty-one (21) years of age and am competent to make this affidavit (the "Affidavit"). I am Senior Vice President of Border Foods Companies who serves as Senior Vice President of Sky Ventures, LLC ("Debtor"). I submit this Affidavit to assist the Court and other parties in interest in understanding the circumstances surrounding the commencement of this chapter 11 case (the "Case") and in support of the Debtor's "First Day Motions" filed with the Court. Any capitalized term not expressly defined in this Affidavit will have the meaning set forth in the relevant First Day Motion.

2. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my personal interaction with management and the other shareholders, and other of the Debtor's advisors, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operations and financial conditions. If I were

{00340507-1}                                                                                              1

called to testify, I would testify competently to the facts set forth in this Affidavit. I am authorized to submit this Affidavit on behalf of the Debtor.

## COMPANY OVERVIEW

A. **Company Overviews**

**Business of the Debtor**

1. Debtor currently owns sixteen locations in the Northern Iowa, Minnesota and Wisconsin area ("Market Area"). All locations are leased. Fifteen of the locations are covered by a Master Lease Agreement with Spirit Master Funding, LLC ("Spirit") and one unit is leased from a third party. In December of 2013, the Debtor owned and operated an additional fifty-four units in the Market Area that were sold to MUY Pizza Minnesota, LLC ("MUY").

2. The major creditors of the Debtor are the following:

   A. Spirit who is the owner of fifteen locations that are leased to the Debtor under a Master Lease;

   B. Pizza Hut, Inc. ("Pizza Hut") is owed for its royalties and amounts are owed for advertising fund payments;

   C. MUY who is owed a four percent operational fee for managing the Debtor's operating stores for April and May of 2014;

   D. McLane Foods ("McLane"), supplier of most of the food items and supplies used by the Debtor in its franchise restaurants. McLane has both a reclamation and PACA claim;

   E. Border Foods, an entity affiliated with the Debtor is owed in excess of $6,000,000.00; and

   F. Spirit and other landlords for properties leased by the Debtor.

3. The Debtor has over 140 employees located in its Market Area and 133 are hourly and 7 are salaried with other employees being part-time personnel who work in the stores in the Market Area. The Debtor does not directly pay any insiders. Costs for items such as insurance incurred by Border Foods are allocated to the Debtor. Border Foods is not requesting any payment pursuant to the motions.

4. The Debtor, immediately prior to the filing of the Chapter 11, sold 54 of its locations to MUY. The reason for the sale was the business decision of the Debtor to exit the Pizza Hut franchise business. The decision was based upon the fact that sales have remained stagnant, costs have increased and, under the Pizza Hut Franchise Agreement, the Debtor would be required to invest substantial sums in capital improvements.

B. **Existing Capital Structure**

5. The existing capital structure of the Debtor is comprised primarily of Spirit, third party trade creditors and Border Foods, Inc., a related entity of the Debtor. The Master Lease to Spirit is in default and will terminate in approximately seven years.

6. The Debtor owes Pizza Hut approximately $40,000.00 for past due royalties and an additional $30,000.00 for ad fund payments due incident to its operation of Pizza Hut stores. The Debtor's Franchise Agreements with Pizza Hut terminate in December of 2014.

7. McLane provides most of the food and supplies used in connection with the operation of the Debtor's restaurants. At the time of filing, the Debtor was current in its payments to McLane; however, the outstanding balance reflects an outstanding indebtedness for deliveries that have been made but not yet billed.

C. **Events Leading to the Debtor's Restructuring**

8. The success of a quick service restaurant such as a Pizza Hut franchise is dependent upon a number of factors that are outside the control of the franchisee. The factors include, but are not limited to: 1) food costs; 2) brand strength; and 3) pricing.

9. Over the last five years, the Debtor has faced increasing food costs, other costs such as gasoline, an increase on the minimum wage, increased competition for the Pizza Hut brand in the United States and stagnant pricing of its product. The combination of the factors has led to a condition where the Debtor's margins have decreased and making additional capital investments in the Debtor is not prudent.

10. The Debtor is filing in the hope of: (i) selling its remaining assets; and (ii) paying creditors the proceeds of the liquidation.

**D.    Summary of First Day Pleadings**

11. I have read and reviewed the following First Day Motions (including the exhibits attached thereto) and the allegations contained in each are true and correct to the best of my knowledge, information, and belief.

12. I believe that the relief sought in each of the First Day Motions (a) is in the best interests of the estate and its creditors; (b) is vital to enable the Debtor to make the transition to, and operate in, chapter 11 with minimum interruption or disruption to its business, or loss of productivity or value; and (c) constitutes a critical element in achieving the Debtor's successful reorganization and confirmation of a plan of reorganization.

**E.    Motion for Interim and Final Orders: (A) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtor on Account of Prepetition Amounts Due; and (B) Establishing Procedures for Determining Requests for Additional Assurance**

13. In the ordinary course of its business, the Debtor may incur utility expenses for water, electricity, natural gas, telephone service, internet service, and other services. See

{00340507-1}                                                                                                                     4

attached list. Approximately 20 utility providers (collectively, the "Utility Providers") provide these services to the Debtor. I believe that uninterrupted utility services are essential to the Debtor's ongoing operations and to the success of the Case. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtor's business operations could be disrupted, and such disruption would jeopardize the Debtor's reorganization efforts. Thus, I believe it is essential that the utility services continue uninterrupted during the Case.

14. The Debtor expects to have ample liquidity to timely pay all postpetition obligations owed to its Utility Providers. To provide additional assurance of payment for future services to the Utility Providers, I understand that the Debtor proposes to provide a deposit to each requesting Utility Provider in an amount equal to thirty (30) days' worth of the utility service (after the utility applies any deposit to its pre-petition bill) as calculated by the Debtor according to the last historical 52-week period ("Adequate Assurance Deposit" and together with the cash flow from operations, collectively, the "Proposed Adequate Assurance"); provided, however, that Utility Providers may object to the Proposed Adequate Assurance if (a) such a request is made in writing no later than thirty (30) days after the date upon which the Emergency Motion for Interim and Final Orders Providing Adequate Assurance of Utility Payment is filed (the "Request Deadline"); (b) such requesting Utility Provider does not already hold a deposit equal to or greater than the Adequate Assurance Deposit (which existing deposit shall be deemed to be the Adequate Assurance Deposit); and (c) such requesting Utility Provider is not currently paid in advance for its services. I believe that the Proposed Adequate Assurance provides the protection required to grant sufficient adequate assurance to the Utility Providers.

**F.    Motion for Authority to Pay Employees' Prepetition Wages, Related Expenses, Benefits and Taxes**

15. The Debtor seeks to pay its Employees for work performed prepetition, to honor other prepetition Employee-related obligations and benefits, and to continue paying its Employee obligations in the ordinary course of the Debtor's business. In addition, the Debtor seeks authorization for applicable banks to receive, process, honor, and pay any and all checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtor's payroll and/or general disbursement accounts, to the extent that such checks or transfers relate to any of the prepetition Employee obligations.

16. Prior to the filing, the Debtor employed 140 full and part-time employees to manage, oversee and operate its business and restaurants on a day-to-day basis. Approximately 133 employees are hourly and 7 employees are on salary. The Debtor compensates its Employees on a bi-weekly basis. The payroll period ends on May 12, 2014 with payment to employees made on May 21, 2014.

17. The continued operation of the Debtor's business and its successful reorganization depends largely upon the retention of the services of the Employees and the maintenance of Employee morale and cooperation. Consequently, it is critical that the Debtor be authorized to satisfy its Employee-related obligations and continue its ordinary course Employee plans, policies, and programs in effect as of the Petition Date. Moreover, if the checks issued and fund transfers requested in payment of the prepetition Employee obligations are not honored, or if such earned obligations are not timely paid postpetition, the Debtor's Employees could suffer extreme personal hardship and may even be unable, in some instances, to pay its daily living expenses. In addition, it would be inequitable to require the Debtor's Employees to bear personally the cost of any business expenses they incurred prepetition for the benefit of the Debtor with the understanding that they would be reimbursed.

18. The Debtor, in the ordinary course of business, also accrues state, local and federal employment and withholding taxes relating to wages earned by the Debtor's Employees, which taxes are calculated based upon statutorily mandated percentages of earned wages.

19. I believe that the authority to pay all Employee obligations, including Employment and Withholding Taxes, in accordance with the Debtor's prepetition business practices is in the best interests of the Debtor and its estate and will enable the Debtor to continue to operate its business in chapter 11 without disruption and to prevent immediate and irreparable harm to the Debtor. A substantial reduction in force, which would likely occur if Employees were not paid, would cause immediate and irreparable harm to the estate and severely hamper the Debtor's reorganization efforts.

**G.  Application by Debtor for Entry of an Order Authorizing the Employment and Retention of Douglas S. Draper and the Law Firm of Heller, Draper, Patrick, Horn & Dabney, LLC as Counsel for the Debtor Pursuant to Section 327(a)**

20. The Debtor seeks to retain Heller Draper as its attorney because of Heller Draper's extensive experience and knowledge in matters involving the franchise food and quick service restaurant business under chapter 11 of the Bankruptcy Code. Heller Draper has worked with the Debtor since October 2013 in connection with its restructuring and is familiar with all issues that will be raised in this Chapter 11. The Debtor submits that their expertise, experience and knowledge will be efficient and cost effective.

21. In preparing for this bankruptcy case, Heller Draper has become familiar with the Debtor's businesses and financial affairs and many of the potential legal issues which may arise in the context of this chapter 11 case. Accordingly, the Debtor believes that Heller Draper is both well qualified and uniquely able to represent the Debtor as counsel in its Chapter 11 case in an efficient and timely manner.

22. The employment of Heller Draper as the Debtor's bankruptcy counsel, pursuant to the terms of this Application and the parties' Engagement Letter is appropriate and necessary to enable the Debtor to execute faithfully its duties as debtor and debtor in possession and to implement a successful restructuring and reorganization of its business operations and financial affairs.

**H.    Application for Order Authorizing the Employment and Retention of Timothy M. Barnett and the Law Firm of Winthrop & Weinstine, P.A. as Special Counsel and as Local Bankruptcy Counsel**

23. The Debtor seeks to retain Winthrop & Weinstine, P.A. ("Winthrop"), as Special Counsel and as Local Bankruptcy Counsel because of Winthrop's extensive experience and knowledge in matters of this nature and business reorganizations under chapter 11 of the Bankruptcy Code. Additionally, the Debtor submits that Winthrop's expertise, experience and knowledge will be efficient and cost effective for Debtor's estate.

24. Winthrop, due to its prior representation of the Debtor, has become familiar with the Debtor's businesses and financial affairs and many of the potential legal issues which may arise in the context of this Chapter 11 case. Accordingly, the Debtor believes that Winthrop is both well qualified and uniquely able to represent the Debtor as Special Counsel and as Local Bankruptcy Counsel in its Chapter 11 case in an efficient and timely manner.

25. The employment of Winthrop as the Debtor's Special Counsel and as Local Counsel is appropriate and necessary to enable the Debtor to execute faithfully its duties as debtor and debtor in possession and to implement a successful restructuring and reorganization of its business operations and financial affairs.

**I.    Motion for Entry of an Order Under 11 U.S.C. §§105, 363, 364, 1107 and 1108 Authorizing Maintenance of Existing Bank Accounts, Continued Use of Existing Business Form, Continued Use of Existing Cash Management System and for Related Relief**

26. Pursuant to the above-titled motion, the Debtor seeks a partial waiver of the UST's requirement that the Bank Accounts be closed immediately. The Debtor submits it is important to keep open the account that receives credit card payments and serves as the collection point for stores. If the Debtor is required to close the Bank Accounts immediately, this requirement would cause undue disruption to the credit card receipts and its cash flow and business operations. If the Debtor is not allowed to keep the Bank Accounts open to collect funds, its operations will not only be severely impaired, but critical funds may not be collected on account of certain accounts receivable.

27. To minimize expense to its estate, the Debtor also requests authority to continue to use all correspondence and business forms (including, but not limited to, letterhead, purchase orders, invoices, etc.), as well as checks and bookkeeping records existing immediately before the Petition Date, without reference to its status as a debtor in possession.

28. Changing correspondence and business forms would be unnecessarily burdensome to the estate, as well as expensive and disruptive to the Debtor's business operations. Most of the forms used by the Debtor contain Pizza Hut designations and are beneficial to the business. These additional costs will reduce the resources available in the Debtor's estate to satisfy the claims of creditors and other parties in interest.

29. The Debtor does not plan on operating any of its locations past June 30, 2014 so the relief requested is only through June 30, 2014.

**J.   Motion of the Debtor Pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure for an Extension of Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs**

30. Due to the limited manpower available, and the need to allocate resources to maintaining the business, the Debtor anticipates that it will be unable to complete its Schedules and Statement in the time required under Bankruptcy Rule 1007(c).

31. To prepare its required Schedules and Statement, the Debtor must compile information from books, records, and documents relating to a multitude of transactions. Collection of the necessary information will require a heavy expenditure of time and effort on the part of the Debtor and its limited number of employees.

32. At the present time, the Debtor anticipates that it will require at least thirty (30) additional days to complete their Schedules and Statement. The Debtor therefore requests that the Court extend the fourteen (14) day period for an additional thirty (30) days.

**K.     Motion for Interim and Final Orders: (A) Prohibiting Utilities from Altering, Refusing or Disconnecting Services to, or Discriminating Against, the Debtor on Account of PrePetition Amounts Due, and (B) Establishing Procedures for Determining Requests for Adequate Assurance**

33. The Debtor currently uses electric, propane natural gas, heat, water, sewer, phone and other similar services as identified on Exhibit "A" attached to the Motion.

34. Uninterrupted utility service is essential to maintaining the Debtor's assets and business operations, maximizing the value of the Debtor's assets and estate and the success of this bankruptcy case. Should any Utility Company refuse or discontinue service, even for a brief period of time, the Debtor may be forced to cease its operations, resulting in a substantial disruption of its businesses and loss of revenue. The temporary or permanent discontinuation of utility services at any of the Debtor's property or offices could irreparably harm the Debtor's businesses, jeopardize the Debtor's efforts to reorganize and diminish the return for creditors.

35. To the best of the Debtor's knowledge, there are no significant defaults or arrearages with respect to any utility bill nor have there been any significant defaults historically.

{00340507-1}                                                                                                                                10

36. The Debtor intends to pay the postpetition obligations to the Utility Companies timely. The Debtor will have sufficient funds to make timely payments to all postpetition Utility Companies and will make these payments from their cash collateral.

37. The Debtor request entry of an interim order: (a) prohibiting those utility companies currently providing services, or that will provide services, to the Debtor, from altering, refusing or discontinuing services to, or discriminating against, the Debtor on account of prepetition amounts due, pending entry of final order granting the relief sought; (b) establishing procedures for determining requests for adequate assurance; and (c) scheduling a final hearing on the Motion within thirty (30) days of the date of the Motion. The Debtor also seeks the entry of a final order granting the relief requested herein on a permanent basis.

**L.    Debtor's Motion for Order (i) Approving Sale of Certain of Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (ii) Approving Assumption and Assignment and Rejection of Leases, (iii) Approving Proposed Compromise;  or in the Alternative (iv) Rejecting the Second Amended and Restated Master Lease Agreement; and (v) for Other Related Relief**

38. The Debtor has made a business decision to terminate its Pizza Hut business. The Debtor has six (6) operating stores that MUY is interested in purchasing for $951,000.00.

39. The Debtor has actively marketed its assets over the last few months and the MUY offer, based upon discussions with Chris Kelleher of Auspex Capital, LLC, represents the highest and best offer. It also results in full lease payments for Spirit for the rent allocable to the six (6) stores.

40. The sale motion needs to be addressed quickly since the stores at issue are leased from Spirit and are part of a Master Lease with Spirit covering fifteen (15) stores. The Debtor is not in a position to pay rent on fifteen (15) stores when it is only operating six (6) locations.

41. The Debtor requests that the Court set: (i) a hearing on the sale motion; and (ii) appoint a mediator to see if an agreement can be reached between the Debtor, MUY and Spirit for the benefit of the estate.

## CONCLUSION

The Debtor's ability to reorganize successfully is best served by its continued operation as a going-concern. In order to minimize any loss of value to its business, the Debtor's immediate objective is to engage in business as usual following the commencement of this Chapter 11 case, with as little interruption to the Debtor's operations as possible. I believe that if this Court grants the relief requested in each First Day Motion, the prospect for achieving these objectives, to the maximum benefit of creditors and the Debtor's estate, will be substantially enhanced.

By: _____
Name: Barry M. Zelickson
Title: Senior Vice President


FURTHER AFFIANT SAYETH NAUGHT.

Signed: May /3, 2014

Sworn to and subscribed before me
this /3th day of May, 2014.

_____
NOTARY PUBLIC


JENNIFER M. BANG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2016

Attachment – List of Utility Providers

{00340507-1}                                                                                    13

**EXHIBIT "A"**
**UTILITY SERVICE LIST**

**13773: Lakeville**

Electric: Account 299048-9
Dakota Electric Association
4300 220th Street West
Farmington, MN 55024-9583

Natural Gas: Account 6205737-7
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

Water: Account 00073498-0566173058
City of Lakeville
20195 Holyoke Ave
Lakeville, MN 55044-8339

**13776: Hibbing**

Electric Gas and Water: Customer Number: 12-037850-03
Hibbing Public Utilities
PO Box 249
Hibbing, MN 55746-0249

**13778: Two Harbors**

Electric Gas and Water: Account 6-073260-01
City of Two Harbors
522 1$^{sst}$ Ave
Two Harbors, MN 55616

**13779: Ely**

Electric and Water: Account 01-00000951-00-0
EUC Water and Light
2210 E. Sheridan Street
Ely, MN 55731

Gas (Propane Tank): Account 3004646
Ferrellgas

**13780: Duluth London Rd.**

Electric: Account 93702
Minnesota Power
PO Box 1001

{00339417-1}

Duluth, MN 55806-1001

Gas and Water:  Account 064577650-003
City of Duluth Comfortsystems
PO Box 169008
Duluth, MN 55816-9008

**13782 Sauk Rapids:**
Electric and Natural Gas:  Account: 51-5191730-1
Excel Energy
PO Box 9477
Minneapolis, MN 55484-9477

Water: Account 22-00003400-01-6
City of Sauk Rapids
250 Summit Avenue North
Sauk Rapids, MN 56379

**13783:  Grand Rapids**
Electric and Water:  Account 513937-113937
Grand Rapids Public Utilities Commission
500 SE 4th Street, PO Box 658
Grand Rapids, MN 55744

Gas:  Account 4369340-7
Minnesota Energy Resources
PO Box 70022
Prescott, AZ 86304-7022

**13786:  Buffalo**
Electric:  Account 114-1091-9301
Wright Hennepin Cooperative Electric Association
PO Box 330
Rockford, MN 55373

Gas:  Account 6205707-0
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

Water: Account 08-053110-02
City of Buffalo
212 Central Avenue

Buffalo, MN 55313

**13787:  Elk River**
Electric and Water:   Customer # 7388
Elk River Municipal Utilities
13069 Orono Parkway NW
PO Box 430
Elk River, MN 55330-0430

Gas:  Account 6204372-4
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

**13788:  Sauk Centre**
Electric and Water:  Account 325
Sauk Centre Public Utilities
PO Box 128
Sauk Centre, MN 56378

Gas:  Account 6204591-9
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

**13791:  Willmar**
Electric and Water:  Account 17 589 22
Willmar Municipal Utilities
PO Box 937
Willmar, MN 56201-0937

Gas:  Account 6206327-6
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

**13793:  Cresco, IA**

Electric:  Account 28-06-192-1330-05
Alliant Energy
PO Box 3066
Cedar Rapids, IA 52406-3066

Gas:  Account 3623 8657 93
Black Hills Energy
PO Box 6001
Rapid City, SD  57709-6001

Water:  Account 2008001
City of Cresco
130 N. Park Place
Cresco, IA 52136

**13796:  Clear Lake, IA**
Electric and Gas:  Account 27-05-068-1420-03
Alliant Energy
PO Box 3066
Cedar Rapids, IA 52406-3066

Water:  Account 010556-000
Clear Lake Sanitary District
PO Box 282
Clear Lake, IA 50428

**13797:  Forest City**
Electric:  Account 015-5080-00-01
City of Forest City
PO Box 346
Forest City, IA 50436

Gas:  Account 1319 1738 36
Black Hills Energy
PO Box 6001
Rapid City, SD  57709-6001

Water:
City of Forest City Municipal Utilities
PO Box 346
Forest City, IA 50436

**13799:  Algona**
Electric:  Account 26795
Algona Municipal Utilities
104 West Call Street

PO Box 10
Algona, IA 50511

Gas: Account 42410 – 49015
MidAmerican Energy
PO Box 8020
Davenport, IA 52808-8020

**13810: Hutchinson**
Electric and Gas: Account 00437000-051128
Hutchinson Utilities Commission
225 Michigan St. SE.
Hutchinson, MN 55350-1905

Water: Account 2-515-9640-8-00
City of Hutchinson
111 Hassan St SE
Hutchinson, MN 55350-2522

**13811: Marshall**
Electric and Water: Account 71-0035-03
Marshall Municipal Utilities
113 South Fourth Street
Marshall, MN 56258-1223

Gas: Account 000953 02
Great Plains Natural Gas Co.
PO Box 176 705 W Fir Ave
Fergus Falls, MN 56538-0176

**13812: Albert Lea**
Electric and Gas: Account 20-02-246-0170-05
Alliant Energy
PO Box 3066
Cedar Rapids, IA 52406-3066

Water: Account 007119-000
City of Albert Lea
221 Clark Street E
Albert Lea, MN 56007

**13823: Woodbury**
Electric and Natural Gas: Account: 51-5191730-1
Excel Energy
PO Box 9477
Minneapolis, MN 55484-9477

Water: Account 00006558-0032306600
City of Woodbury
8301 Valley Creek Road
Woodbury, MN 55125

**13826:  Superior WI**
Electric Gas and Water: Account 15881
Superior Water, Light and Power Co.
PO Box 169003
Duluth, MN 55816-9003

**13839:  Columbia Heights**
Electric:   Account: 51-5191730-1
Excel Energy
PO Box 9477
Minneapolis, MN 55484-9477

Gas:  Account 6204021-7
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

Water:  Account 220-025-00-01
City of Columbia Heights
590 40th Avenue NE
Columbia Heights, MN 55421-3878

**141012: Golden Valley KFC**
Electric:   Account: 51-5337269-1
Excel Energy
PO Box 9477
Minneapolis, MN 55484-9477

Gas:  Account 6205704
Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440-1144
Centerpoint Bill Payment Address:
PO Box 4671
Houston, TX 77210-4671

Water:  Account 0032201824

City of Golden Valley
7800 Golden Valley Road
Golden Valley, MN 55427-4508

**13862:  Duluth Grand Ave**
Gas and Water:   Account 114051940-004
City of Duluth Comfortsystems
PO Box 169008
Duluth, MN 55816-9008

Electric: Account 93706
Minnesota Power
PO Box 1001
Duluth, MN 55806-1001

9078002v1