## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                        Chapter 11

Sky Ventures, LLC                             Case No. 14-42107-MER

                Debtor.

---

**NOTICE OF HEARING, MOTION AND MEMORANDUM OF LAW FOR AUTHORITY
TO SELL PROPERTY FREE AND CLEAR OF INTERESTS, LIENS, MORTGAGES,
PRIVILEGES AND ENCUMBRANCES PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363**

---

### <u>NOTICE OF HEARING</u>

1.      Sky Ventures, LLC ("<u>Debtor</u>"), through its undersigned attorneys, respectfully moves the Court (the "<u>Motion</u>") for entry of an order (the "<u>Order</u>") authorizing the Debtor to sell all of Debtor's right, title and interest in, to and under the assets and rights owned by Debtor in certain improved immovable property and related personal property located in Algona, Iowa at 100 North Phillips Street to Michael Hjelmeland hereafter defined ("<u>Hjel</u>") or a higher bidder at an auction conducted under the auspices of this Court (Hjel or such higher bidder being hereafter referred to as "<u>Purchaser</u>") for the purchase price of Eighty Thousand and No/100 ($80,000.00) Dollars ("<u>Purchase Price</u>"), on the terms and conditions set forth in that certain Purchase Agreement ("<u>APA</u>"). The APA and all exhibits are attached hereto as **<u>Exhibit A</u>**.  For purposes of this Motion, all capitalized terms not otherwise defined shall have the meaning set forth in the APA.

2.      The court will hold a hearing on this Motion at **9:00 a.m. on Wednesday June 18, 2014,** before the Honorable Michael Ridgeway, Courtroom 7W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3.      Any response to this motion must be filed and served not later than June 13, 2014, which is five (5) days (including Saturdays, Sundays and holidays) before the date set for the hearing. Unless a response opposing the motion is timely filed, the Court may grant the motion without a hearing.

**JURISDICTION**

4.      Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction: (i) to hear and determine the Motion; and (ii) over the persons and property affected.  The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue for this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND AND PROCEDURAL HISTORY**

5.      On May 14, 2014 (the "Petition Date"), the Debtor filed the captioned Chapter 11 case ("Case").  The Debtor continues to operate its business and manage its property as a debtor-in-possession, pursuant to §§1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed, and no official committee of creditors has been established.

6.      The Debtor, for the past year, has actually been marketing its properties to potential buyers or investors.  For a history and the reason for the sale of the Property, the parties are directed to the Affidavit of Barry M. Zelickson and Declaration of Christopher J. Kelleher.

**APA ACCEPTED BY THE SELLER AND THE LENDER**

**7.**      The Debtor has entered into an APA with Hjel.  The terms of the APA are standard terms between a seller and a third party buyer.  The Purchaser is not an affiliate or a related party to the Debtor.  In fact, the solicitation of offers for the Property was handled by the third party broker who is seeking a commission incident to the sale.

## BID PROCEDURES TO BE EMPLOYED TO MAXIMIZE VALUE

8.    The Debtor has implemented the following bid procedures ("Bid Procedures") described in this Motion in an attempt to increase the sales price in excess of that set forth in the APA.  The Bid Procedures being implemented are the following:

### Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a party interested in the Property (a "Potential Bidder") must deliver a signed, sealed, proposed APA for the Property to the Seller's counsel: Douglas S. Draper, Heller, Draper, Patrick, Horn & Dabney, LLC, 650 Poydras Street, Suite 2500, New Orleans, Louisiana  70130 (ddraper@hellerdraper.com) on or before **5:00 p.m. (Central Time), on June 18, 2014**, in the same form and substance of the APA, attached hereto, as well as provide the appropriate deposit (as outlined below) for deposit to the trust account of the counsel for the Seller, Heller, Draper, Patrick, Horn & Dabney, L.L.C. (contact Greta M. Brouphy (504) 299-3351 for wiring instructions).

### Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (a)-(g) under the Bid Requirements section below, and that the Seller determines is reasonably likely to be able to consummate a sale if selected as a Successful Bidder (hereafter defined) at the open Auction.

Upon receipt from a Potential Bidder of the information, documents and cash consideration required under Bid Requirements subparagraphs (a)-(g) below, the Seller, as soon as practicable, shall determine and notify each Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder, and whether such Bidder may participate at the Auction.

### Bid Process

The Seller shall, subject to the consent of the lender: (a) determine whether a Potential Bidder is a Qualified Bidder; (b) receive offers from Potential Bidders; (c) negotiate any offers made to purchase the Assets; and (d) determine the Qualified Bidder(s) (collectively, the "Bid Process").  The Seller, with the consent of the Lender, shall have the right to adopt such other rules for the Bid Process that will better promote the goals of the Bid Process and that are not inconsistent with any of the other provisions hereof, the provisions of the APA or requirements of any Bankruptcy Court order.

### Bid Deadline

**The deadline for submitting bids by a Potential Bidder shall be June 13, 2014, at 5:00 p.m. (Central Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Potential Bidder that desires to acquire the Property shall submit a sealed, conforming APA for the Property, along with any additional information that supports the APA and the financial wherewithal of the Potential Bidder, along with the respective Deposit (hereafter defined) by wire transfer or cashier's check (the "Bid") and shall deliver written copies (including soft copies by email) of the Bid to:  (i) counsel for the Seller, Heller, Draper, Patrick, Horn & Dabney, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, Louisiana  70130, Attn: Douglas S. Draper, Esq. (ddraper@hellerdraper.com).  A Potential Bidder shall not disclose the contents of its Bid(s) to any parties other than as set forth in this paragraph, and shall maintain the confidentiality of its sealed Bid(s).

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### Bid Requirements

To be eligible to participate in any Auction, each Bid and each Bidder submitting a Bid must be determined by the Seller and the Lender to satisfy each of the following conditions:

(a)    Deposit. Each Bid must be accompanied by a deposit (the "Deposit") in the form of a certified check payable to the order of Heller, Draper, Patrick, Horn & Dabney, LLC, or wire transfer, in the amount of Eight Thousand and No/100 ($8,000.00) Dollars to be held as a deposit and provide proof of funds for the balance of the bid showing availability to close the purchase of the Property on or before the Closing Date.

(b)    Irrevocable. Each Bid must be irrevocable until five (5) business days after both the approval of the sale of the Property (the "Proposed Sale") by the Bankruptcy Court (to the extent required) and the closing of such sale (the "Termination Date").

(c)    Terms of Bid.

(i)    Property.  The minimum cash only bid (the "Cash Bid Price") for the Property is Eighty-Two Thousand Five Hundred and No/100 ($82,500.00) Dollars, which is Two Thousand Five Hundred and No/100 (2,500.00) Dollars in excess of the Purchase Price set forth in the APA.

(ii)    No Contingencies. Each Bid may not be conditioned on obtaining financing or any internal approval, third party approvals, or on the outcome or review of due diligence that have not been satisfied as of the time of the Auction (hereafter defined), but may be subject to the accuracy in all material respects at the Closing of specified representations and warranties or the satisfaction in all material respects at the Closing of specified conditions, none of which shall be more burdensome to the Seller than those set forth in the APA or as otherwise agreed to by the Seller.

(iii)    Closing.  All Bids must provide for a closing ("Closing") no later than the Closing Date provided in the APA, unless otherwise provided in the accepted bid

or by Seller and the Lender in their sole discretion or unless otherwise ordered by the Bankruptcy Court.

      (iv)     <u>Relationships with the Debtors</u>.  Each Bid must disclose the Bidder's direct or indirect relationship, interest, or affiliation in or with the Seller, if any.

(d)     <u>Asset Purchase Agreement</u>.  Each Bid must include a copy of the APA requested by such Bidder marked to show all changes to the APA, attached hereto, consistent with the provisions of these Bid Procedures.

(e)     <u>No Fees Payable to Qualified Bidder</u>.  Each Bid may not request or entitle the Bidder(s) to, nor may the Seller pay or agree to pay, any breakup fee, termination fee, expense reimbursement or similar type of payment or credit to any Bidder(s).  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

(f)     <u>Proof of Financial Ability to Perform/Financial Assurance</u>. Each Potential Bidder must provide written evidence reasonably acceptable to the Seller, including current financial statements and a description of equity and debt financing sources (although such financing sources shall not be conditions to closing) to be used to close the transaction as set forth in the Bid, and that demonstrates that the Potential Bidder(s) has the necessary financial ability to close the contemplated transaction (including access to capital totaling at least the Purchase Price).  The Seller may require additional financial information to demonstrate that a Bidder may perform its obligations.

A Bid received from a Potential Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "<u>Qualified Bid</u>," if the Seller and the Lender believe, in their discretion, that such a Bid would be consummated if selected as the Successful Bid (hereafter defined). In the event that any Bid is determined by the Seller and the Lender not to be a Qualified Bid, such Bidder shall be refunded its Deposit within two (2) business days after that determination.

### Sale Process

If one or more Qualified Bids is received under seal and is acceptable to the Seller and the Lender, the Seller and/or the Bankruptcy Court shall conduct an open auction (the "<u>Auction</u>") to determine the prevailing bid.  The Purchaser and all of those parties that have submitted a Qualified Bid may participate in the Auction in the manner set forth herein.

If there are no Qualified Bids on the Property, the Seller may proceed directly to the Final Sale Hearing seeking approval of the APA with the Purchaser.

### Auction Procedure

Any Auction of the Property shall be conducted according to the following procedures:

(a)        Participation at the Auction.

Only a Qualified Bidder that has submitted a Qualified Bid for the Property by the Bid Deadline is eligible to participate at any Auction for such Assets. Notwithstanding the foregoing, any Potential Bidder who has submitted a Qualified Bid conditioned on obtaining financing or any internal approval, third party approvals, or on the outcome or review of due diligence that have not been satisfied as of the time of the submission of its bid, shall certify immediately prior to the Auction that all such conditions have been satisfied as a condition to being allowed to bid at the Auction.  In the absence of a certification required by the preceding sentence, the bid of such Qualified Bidder shall no longer be deemed a Qualified Bid, and such bidder shall not be allowed to participate in the Auction.

Hjel shall be deemed to be a Qualified Bidder, provided that Hjel has not terminated the APA prior to the Auction.  Hjel may credit bid its Breakup Fee as provided in the APA.

(b)        Auction.

**The Auction shall be held on June 18, 2014, at 9:00 a.m. (Central Time) at United States Bankruptcy Court, District of Minneapolis, Courtroom of Judge Michael E. Ridgway, 7W United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415 or such other place as determined by the Court and/or Seller.**

At the commencement of the Auction, the Seller shall describe the terms of the highest Qualified Bid of the Property being auctioned, which shall serve as the initial Qualified Bid.

(c)        Terms of Subsequent Bids.

An "Overbid" is any bid made at the Auction subsequent to the Seller's announcement of the highest Qualified Bid. To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

(i)        *Subsequent Minimum Overbid Increment.*

Any Overbids after the highest Qualified Bid shall be made in monetary increments of $2,000.00.

(ii)        *Remaining Terms are the Same as for Qualified Bids.*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided that the Bid Deadline shall not apply.

(iii)        *Duration of an Overbid and Selection of Backup Bidder.*

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (A) the Seller accepts a higher Qualified Bid as an Overbid and (B) such Overbid is not selected as the next highest or otherwise best offer (the "Backup Bid") after the selection of the Successful Bid (as defined below).  The Qualified Bidder with the selected Backup Bid, shall have the option, but not the obligation, to purchase the Property under the

terms of the APA included in the Qualified Bid for the amount of its last bid made at the Auction.  The deposit in connection with the Backup Bid, will be held until one (1) business day after the closing to the Successful Bidder.

(iv)    *Consideration of Overbids.*

The Seller, with the consent of the Lender, subject to approval of the Bankruptcy Court, reserves the right, in their discretion, to make adjournments in the Auction to, among other things: (A) facilitate discussions between the Seller and the Lender with an individual Qualified Bidder(s); and (B) allow individual Qualified Bidder(s) to consider how they wish to proceed, it being understood that the Seller's and the Lender's consideration of any Overbid will include matters in addition to the economic consideration offered by such Overbid.

(d)    Additional Procedures.

The Seller, with the consent of the Lender, in its discretion may adopt other or additional rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or with the asset purchase agreements, as applicable.

(e)    Consent to Jurisdiction as Condition to Bidding.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the APA, as applicable.

(f)    Closing the Auction.

The Auction shall close when there are no further bids received for the Property.  Upon conclusion of the bidding, the Auction shall be closed, and the Seller and the Lender shall immediately (i) review each Qualified Bid and the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale; and (ii) upon such review, the Seller or the Bankruptcy Court shall immediately identify (i) the successful bidder (the "Successful Bidder") and the successful bid (the "Successful Bid"); (ii) the Backup Bid; and (iii) advise the Qualified Bidders of such determination.

**Final Sale Hearing**

**The Final Sale Hearing on the Sale Motion will be held on June 18, 2014, at 9:00 a.m. or immediately after the Auction at the United States Bankruptcy Court for District of Minneapolis, 7W United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415.**

At the Final Sale Hearing, the Seller shall present to the Bankruptcy Court the Successful Bid and the Backup Bid and seek approval thereof.

## STATUTORY PREDICATES

10.     This Motion is brought pursuant to the authority of 11 U.S.C. §§105 and

363(b)(1), 363(f) and 363(m) and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure.

## RELIEF REQUESTED

11.     Pursuant to Sections 105, 363(b)(1), 363(f) and 363(m), the Debtor is seeking an

order authorizing it to enter into the sale of the Property for a total price of Eighty Thousand and

No/100 ($80,000.00) Dollars, or such other price if a higher price is achieved at the Auction

requested in this Motion, subject to all closing costs, deductions and prorations as provided in the

APA, to Purchaser.

12.     At the Closing, the Purchaser shall assume, and thereafter pay, perform and

discharge when due, only such liabilities that first accrue or arise after the Closing Date and that

relate to any of the Property, including the Assumed Contracts (collectively, the "Assumed

Liabilities").

13.     Debtor shall retain, and remain liable and obligated for any of its respective

liabilities not otherwise expressly included in the Assumed Liabilities.

14.     The Debtor requests that the sale of the Property be made free and clear of all

interests (including any successor, transferee or similar liability), liens (including, but not limited

to, any and all "liens" as defined in Bankruptcy Code § 101(37)), claims (including, but not

limited to, any and all "claims" as defined in Bankruptcy Code § 101(5)), liabilities, mortgages,

deeds, trusts, guarantees, security agreements, security interests, pledges, privileges, options,

easements, servitudes, encroachments, hypothecations, charges, obligations, rights, restrictions,

charges and encumbrances in or with respect to any of the Property including, without limitation,

any encumbrances and without any successor, transferee or similar liability on the part of the

Purchaser, and the Order shall expressly direct the record cancellation of all liens and judgments as to the Property.

15.    In connection therewith, the Debtor respectfully requests that the Court find that the Purchaser is not a successor to the Debtor and that the sale of the Property pursuant to the Order does not constitute a de facto merger or consolidation of the Debtor and Purchaser, or a continuation of the Debtor's business, and that Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Property. The finding that the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Property is consistent with applicable law regarding the effect of sales under 11 U.S.C. § 363(b). *See e.g. In Re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir. 2003*); Cibulka v. Trans World Airlines, Inc.*, 92 Fed.Appx. 366, 368 (8th Cir. 2004); *United Mine Workers v. Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir. 1996), certiorari denied 520 U.S. 1118, 117 S.Ct. 1251, 137 L.Ed.2d 332 (1997).

16.    No successor, transferee or similar liability claim, shall bear against or attach or otherwise affect the Property or the Purchaser, and the holders of all such encumbrances, including any successor, transferee or similar liability claims, all shall be permanently enjoined from pursuing any such encumbrance and/or any successor, transferee or similar liability claim against the Property or the Purchaser.

17.    The Purchaser shall have no successor liability with respect to claims or administrative expenses arising or accruing prior to or on the Closing Date, unless otherwise expressly assumed by Purchaser, and shall not be deemed a successor of Seller within the meaning of any revenue, pension, ERISA, COBRA, tax, labor or environmental law, rule or regulation or any products liability.

18.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  As a general matter, a judge determining a Section 363(b) application [should] find from the evidence presented before him at the hearing a good business reason to grant such an application."  *In re Lionel Corp.*, 722 F.2d 1-063, 1071 (2d Cir. 1983).  Certain factors pertinent to this analysis have been articulated; specifically, the Court should consider whether:

(1)     a sound business purpose justifies the sale;

(2)     accurate and reasonable notice of the sale was provided;

(3)     the price to be paid is adequate, i.e., fair and reasonable; and

(4)     the sale is in good faith, i.e., there is an absence of any lucrative deals with insiders.

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990).  The proposed sale by the Debtor to the Purchaser comports with each of these requirements.

19.     The proposed sale of the Property and the Purchase Price thereof are fair and reasonable and are the result of arm's-length negotiations between the parties.  The agreement represents the best offer received to date by the Debtor.

20.     Satisfaction of any of the requirements delineated in section 363(f) allows the sale of property free and clear of all liens, claims, encumbrances and other interests.  The Debtor submits that any lien, claim, encumbrance or other interest that is not specifically assumed - should there be such claims - will satisfy at least one of the five conditions of section 363(f).

Accordingly, the Debtor requests that the Property be sold free and clear of all liens, claims, and encumbrances and other interests, with such claims attaching to the proceeds of the sale, if any.

21.    If a purchaser is in good faith, section 363(m) protects the parties in the event of a reversal or modification on appeal of the authorization of a sale under section 363(b).   In determining whether a purchaser has acted in good faith, courts look to the integrity of the purchaser's conduct in the course of the legal proceedings.[1] The Debtor submits that Purchaser has acted in good faith and the transaction should be afforded protection under section 363(m).

22.    Considering the good faith of the Purchaser and the reasonableness of the Purchase Price, the Debtor requests that this Court find that good cause exists to authorize the consummation of the sale of the Property without subjecting the Order to a stay of execution, as permitted under Federal Rules of Bankruptcy Procedure 7062 and 6004(h).

23.    The Debtor requests that the Court find that the terms and conditions of the APA are an integral part of the sale of the Property.  In view of: (i) the good faith of the Purchaser, (ii) the reasonableness of the Purchase Price, and (iii) the fact that the terms and conditions of the APA are an integral part of the sale of the Property, the Debtor also requests that the Order authorizing the sale provide, pursuant to 11 U.S.C. § 363(m), that the reversal or modification on appeal of the Order authorizing the sale hereunder shall not affect the validity or enforceability of the sale or any of the terms and conditions of the APA.  *See In re Trism*, 328 F.3d 1003 (8th Cir. 2003).

24.    The Debtor requests that this Court declare that, without limiting the generality of the foregoing, the Order shall constitute all approvals and consents, if any, required by the laws of the State of Minnesota, with respect to the implementation and consummation of the APA and

---

[1] *See, e.g., In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 147-48  (3rd Cir. 1986).

the Order and the transactions contemplated therein and authorizes Barry M. Zelickson as Senior Vice President of the Debtor, to execute any and all documentation contemplated by the Agreement.

25.    The Debtor requests that this Court declare that the Debtor, by and through Barry M. Zelickson, be authorized to execute and deliver to Purchaser any and all conveyance and transfer documents and other agreements described in the APA and, upon Closing, the Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Property or a bill of sale transferring good and marketable title in such Property to Purchaser and ordering and directing each and every federal, state and local governmental agency or department to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and the Order.

26.    The Debtor requests that this Court declare that the APA and all other documents, agreements and instruments necessary to effectuate and consummate the transactions contemplated by the APA together with the terms and provisions of the Order are specifically enforceable against and binding upon, and shall not be subject to rejection or avoidance by, the Debtor, its creditors and all other parties in interest and any assigns, including without limitation any trustee, responsible person, estate administrator, representative or similar person hereinafter appointed for or in connection with any of the Debtor's estate or affairs in this or any subsequent or converted case under the Bankruptcy Code involving the Debtor.

27.    The Debtor further requests that, out of the closing of the sale, it be authorized to pay the real estate broker fees of Tom Geelan of Farm & Home Services.  Pursuant to the terms of the Debtor's pre-petition contract with the real estate broker, the fee will be seven (7%) percent of the sales price.  The broker is not related to or affiliated with the Debtor.

## WAIVER OF RULE 6004(H)

28.     The Debtor requests that this Court provide for a waiver of the fourteen (14) day stay of the order approving the sale of the Purchased Assets under Federal Rules of Bankruptcy Procedure 6004(h) such that the sale of the Property to the Purchaser can close within the timeframe set forth in the APA, which is June 27, 2014.  The APA has a sunset date of June 27, 2014.

## NOTICE

29.     Notice of this Motion has been given to all creditors of the Debtor, the United States Trustee, all prospective bidders all taxing authorities and all parties requesting notice. The Debtor respectfully requests a finding that notice of the Motion and the Sale Hearing is sufficient and provides a reasonable opportunity for objections to the Motion, or higher offers for the Property.

**WHEREFORE**, Sky Ventures, LLC hereby moves this Honorable Court, after notice and hearing, to make all findings requested in this Motion and, considering those findings and applicable law, to enter the Order:

(1)     Approving the APA and the terms and conditions thereof and the sale of the Property to the Purchaser, including the assignment by the Debtor to Purchaser, and the Assumption by Purchaser of, the Assumed Contracts.

(2)     Authorizing the Debtor, and without any further corporate or other action by the Debtor or any officer, person or board of directors thereof, to execute and to perform the APA and, in connection therewith, to sell the Property to Hjel or its assignee as permitted by the APA (or any winning bidder at the Auction), for the sum of $80,000.00 (or such higher price determined at the Auction), free and clear of any and all encumbrances and free and clear of any

successor, transferee or similar liability claim against the Property or the Purchaser except Permitted Liens, and on the terms and conditions set forth in the APA and in this Motion;

(3)    Approving the Bid Procedures that were employed;

(4)    Authorizing the Debtor to consummate the sale of the Property and the assumption and assignment of the Assumed Contracts under 11 U.S.C. § 365, as applicable, pursuant to this Motion and the APA immediately, without delay, to the Purchaser, without the Order being subject to an automatic stay, as permitted under Federal Rules of Bankruptcy Procedure 7062 and 6004(h) or otherwise;

(5)    Providing that no encumbrance, and no successor, transferee or similar liability claim, shall attach or otherwise affect the Property or the Purchaser;

(6)    Authorizing the Debtor to execute any and all conveyance and transfer documents, resolutions, agreements, releases and other agreements described in the APA, and to take any and all such actions necessary and appropriate in its discretion to accomplish the transactions authorized therein without any further order of this Court;

(7)    Declaring that, upon Closing, the Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of title to the Property and a bill of sale transferring good and marketable title in such Property to Purchaser and ordering and directing each and every federal, state and local governmental agency or department to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and the Order;

(8)    Declaring that the APA and all other documents, agreements and instruments necessary to effectuate and consummate the transactions contemplated by the APA together with the terms and provisions of the Order are specifically enforceable against and binding upon, and

shall not be subject to rejection or avoidance, by the Debtor, its creditors and all other parties in interest and any assigns, including without limitation any trustee, responsible person, estate administrator, representative or similar person hereinafter appointed for or in connection with the Debtor's estate or affairs in this or any subsequent or converted case under the Bankruptcy Code involving the Debtor;

(9)     Declaring that the terms and conditions of the APA are an integral part of the sale of the Property and that, in view of: (i) the good faith of the Purchaser, (ii) the reasonableness of the purchase price, and (iii) the fact that the terms and conditions of the APA are an integral part of the sale of the Property, the reversal or modification on appeal of the Order authorizing the sale hereunder shall not affect the validity or enforceability of the sale or any of the terms and conditions of the APA, pursuant to 11 U.S.C. § 363(m);

(10)     Allowing and authorizing the Debtor to pay the real estate commission incident to the sale to Hjel in an amount of seven (7%) percent of the sales price; and

(11)     All other relief requested above and as is just and equitable.

Dated: May 28, 2014                    WINTHROP & WEINSTINE, P.A.

                                       By:  _s/ Jacob B. Sellers_____
                                       Daniel C. Beck, #192053
                                       Jacob B. Sellers, #348879
                                       225 South Sixth Street
                                       Suite 3500
                                       Minneapolis, MN  55402-4629
                                       (612) 604-6400
                                       dbeck@winthrop.com
                                       jsellers@winthrop.com


                                       HELLER, DRAPER, PATRICK, HORN
                                        & DABNEY, L.L.C.
                                       Douglas S. Draper, La. Bar No. 5073
                                       Leslie A. Collins, La. Bar No. 14891
                                       Greta M. Brouphy, La. Bar No. 26216

650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: 504.299.3333/
Fax: 504.299.3399
ddraper@hellerdraper.com
lcollins@hellerdraper.com
gbrouphy@hellerdraper.com

**Counsel for Debtor**

9118048v1

## VERIFICATION

I, Barry Zelickson, declare under penalty of perjury that I am the I am Senior Vice President of Border Foods Companies who serves as Senior Vice President of Sky Ventures, LLC, that I have read the foregoing document, and that the factual information contained therein is true and correct according to the best of my knowledge, information, and belief.

Dated: May 28, 2014

**EXHIBIT A**

**<u>Purchase Agreement</u>**



# PURCHASE AGREEMENT

220 East State Street
Algona, Iowa 50511
515-295-2401



**FARM & HOME SERVICES**

**REAL ESTATE ● INSURANCE ● APPRAISAL**

EQUAL HOUSING OPPORTUNITY

PARTIES: Sky Ventures, LLC _____ (Seller)    05/15/2014    (Date)

agree to sell and convey to Michael Hjelmeland _____ (Buyer)

and Buyer agrees to buy from Seller the following property:    100 North Phillips Street, Algona, Iowa, 50511

legally described as:  South 206.50' of Block 228 Galls Addition Ex Tract Described by Survey Book 5 CL Plats Page 170

Kossuth County, Iowa, 50511

and agree to pay you therefore the sum of $_____    80,000.00    _____ upon delivery of Warranty Deed or as follows:

Earnest money of $_____    1000.00    _____ with  Farm & Home Services Trust Account  as Escrow Agent.

SPECIAL PROVISIONS:

This offer is a cash offer. Buyer agrees to purchase the property in "AS-IS" condition.

If buyer elects to have a home property inspection done per item #16 below, he/she will have 10 days from final acceptance date to have the home inspection done by a qualified person(s).

1. All Real Estate Taxes, prorated to date of possession and based on current taxes, shall be paid by the Seller, or as follows:

2. All special assessments now constituting a lien are to be paid by    seller

3. All subsequent taxes and special assessments are to be paid by the Buyer.

4. Possession to be given on or before    June 27, 2014    , and adjustments of interest, rents and insurance to be made as of like date, settlement to be made upon approval of title , but not later than date of possession.

5. The property as of the date of this offer will be preserved in its present condition and delivered to the Buyer intact unless this contract provides otherwise. Sellers agree to maintain existing insurance until closing. Buyer may purchase additional insurance. The selling agents, their employees and associates make no representations or warranties as to the physical and mechanical condition of this property.

6. The Seller is to continue the abstract to the date of the contract, showing good and merchantable title, free and clear of all taxes, liens, assessments, and encumbrances, other than those specified, except building restrictions and zoning regulations, easements, mineral reservations made by former owners, and mortgage liens agreed to herein.

7. It is understood that no representation made by the agent in the negotiation of this sale are being relied upon unless incorporated herein in writing, and that this property has been offered me by no other person. Any agreement written on the back hereof, and there signed by the parties, shall be a part of this contract.

8. Shades, rods, blinds, Venetian blinds, linoleum, carpeting, storm sash, screens, showers, automatic heating equipment, water heater, electric, and other attached fixtures, are to be left with the house unless excepted on the back of this contract and there signed by the parties.

9. If the Seller fails to fulfill this agreement he will pay to the agent the regular commission in full, and the Buyer shall have the right to have all payments returned, or to proceed by any action or actions at law in equity, and the Seller agrees to pay costs and attorney fees, and a receiver may be appointed.

10. If the Buyer fails to fulfill this agreement, the Seller may forfeit the same as provided in the existing Code of Iowa, and all payments made herein shall be forfeited, and the balance, if any, shall be paid to and become the property of the Seller, or the Seller may proceed by any action or actions, at law or in equity and the Buyer agrees to pay costs and attorney fees, and any other expenses incurred by the Seller as liquidated damage, and a receiver may be appointed, and the balance if any, shall be paid to and become the property of the Seller.

11. In case either party fails to perform his part of this agreement, the other party may at his option forfeit this contract by thirty (day's) notice, or may proceed by action at law or equity to enforce the same as provided by law, and the party in default shall pay all costs including attorney fees, and a receiver may be appointed.

12. In the performance of each part of this agreement, time shall be of the essence.

13. It is agreed that at time of settlement funds of the purchase price may be used to pay taxes and other liens to comply with the above requirements, same to be handled under supervision of  Farm & Home Services, LLC

agent and subject to approval of Buyer's attorney on title questions involved, and needed to produce merchantable title.

14. The parties agree that if Sellers title is held in joint tenancy this contract shall not be construed as severing such joint tenancy.

15. When accepted, this offer shall become a legally binding contract for the sale and purchase of the above described premises (if not furnished, seek competent advice) and the Seller shall pay said agent the agreed upon commission. If this offer is not accepted by the Seller on or before _____ it shall become null and void and the initial payment shall be repaid to the Buyer without liability on the part of said agent to either party.

16. Buyer has been made aware of the availability of property home inspectors. Buyer ☐ Elects ☐ Declines to have a property inspection performed at Buyer's expense.

The foregoing offer is accepted this _____ day of _____ 20___

_____    5-15-14    _____    5/15/14

SELLER & OWNER    Date    BUYER    Date

SS # _____    SS # _____

_____    _____    _____    _____

WIFE OR HUSBAND    Date    WIFE OR HUSBAND    Date

SS # _____    SS # _____

## ADDENDUM TO PURCHASE AGREEMENT

In reference to the Purchase Agreement dated as signed by Buyer on May 15, 2014, in regard to that property located at 100 North Phillips Street, Algona, Iowa 50511, the undersigned Seller and Buyer hereby agree to the following:

1. No. 6 of the Purchase Agreement is hereby amended to add: In lieu of an Abstract, Seller may provide Buyer a standard form ALTA Owner's Title Commitment and title exception documents ("Title Commitment"):as prepared by Stewart Title Company ("Title Company") at Seller's cost and delivered to Buyer within twenty (20) days following the Date of the fully executed Purchase Agreement being delivered to Seller. If the Title Commitment of the Premises shall disclose any defect or limitation of title which renders the title not merchantable (the "Objections"), Buyer shall give written notice thereof to Seller (the "Notice") within ten (10) days following Buyer's receipt of the Title Commitment. Seller shall at its expense be entitled to remove the Objections within a reasonable time (not to exceed thirty (30) days following Seller's receipt of the Notice, unless the parties mutually agree to extend such period), but shall have no obligation to cure any Objections. If Seller notifies Buyer in writing that Seller will not cure an Objection, Buyer shall have seven (7) days to notify Seller in writing that the Agreement is terminated, failing which Buyer shall be deemed to have waived the Objection(s). Any matters not specifically objected to in writing by Buyer shall be deemed to be approved by Buyer and constitute Permitted Exceptions. If Seller is unable to cure or remove an Objection prior to Closing, then the Buyer may elect to terminate this Agreement and the Earnest Money shall be immediately returned to Buyer, provided that Buyer shall additionally have the right to waive any of the Objections (which matters shall be deemed to be Permitted Exceptions) and to close in accordance with the terms and conditions of the Agreement, as amended. At Closing or as soon thereafter as possible, Buyer may order an ALTA owner's title insurance policy in the amount of the Purchase Price, issued by the Title Company at standard rates (the "Title Policy"), which Title Policy shall reflect only the Permitted Exceptions. Seller shall furnish such affidavits as are reasonably required by the Title Company for removal of all standard exceptions from the Title Policy, provided that Buyer shall be responsible for removal of the survey exception. For the purposes of this Agreement, the term "Permitted Exceptions" shall mean: (i) current taxes not yet due and payable; (ii) easements and restrictions of record which do not, in Buyer's discretion, materially interfere with or prohibit the Buyer's intended Use of the Premises; (iii) existing zoning laws, building codes, environmental laws and other statutes, ordinances or regulations generally applicable to the Premises (iv) any matters reflected on prior surveys, and (v) such other matters as may be reflected in the Title Commitment and as to which Buyer does not object within the time and in the manner required hereunder. Buyer shall pay for the Owner's title policy, any Buyer's Lender loan policy, any endorsements requested by Buyer or Lender, any mortgage tax and recording fee for recording Buyer's Lender's mortgage and other documents or other fees and taxes for recording the Seller's Warranty Deed to Buyer. Seller shall pay for preparation of the Warranty Deed and any fee for recording the deed.

1

2. No. 8 of the Purchase Agreement is hereby amended to state: Seller does not warrant that any of the items named in this No. 8 are located within the property. However, Seller does state that any of the items named in this No. 8 are included in this Purchase Agreement if within the property, including any other personal property or equipment not listed in No. 8 and located in the property at the time of Closing. Seller does not warrant the condition of any such personal property and such property is sold "AS IS" with warranty of fitness for a particular purpose or merchantability.

3. Add the following to No. 13 of the Purchase Agreement: Closing shall be an escrow closing through Stewart Title Company, 1700 West 82nd Street, Suite 100, Minneapolis, MN 55432 and the parties shall divide evenly the closing fees of the title company.

4. Delete from No. 15 of the Purchase Agreement: "and the Seller shall pay said agent the agreed upon commission."

5. Add to No. 15 of the Purchase Agreement: Seller shall pay the agent agreed upon commission at the time of Closing with Stewart Title.

6. Add to the Purchase Agreement after No. 16 as No. 17:  Buyer and Seller agree to reasonably cooperate in seeking entry of an order by the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") approving this Agreement (the "Approval Order").  This Agreement is expressly contingent upon entry of an Approval Order by the Bankruptcy Court.  If the Bankruptcy Court does not enter an Approval Order, this Agreement shall be null and void *ab initio* and the Buyer and Seller shall be restored to their positions, rights and interests the same as they had maintained immediately prior to the date of the first signature affixed to the Purchase Agreement.

7. SELLER TO FORWARD ANY KNOWN "ABSTRACT" TO SAID BUYER IF ABSTRACT IS AVAILABLE.

**SELLER & OWNER:**

**SKY VENTURES, LLC**

By: _____

Dated: ___5-19-14___

**BUYER:**

_____

Dated: ___5-16-14___

2

## ADDENDUM TO PURCHASE AGREEMENT

In reference to the Purchase Agreement dated as signed by Buyer on May 15, 2014, in regard to that property located at 100 North Phillips Street, Algona, Iowa 50511, the undersigned Seller and Buyer hereby agree to the following:

1. No. 6 of the Purchase Agreement is hereby amended to add: In lieu of an Abstract, Seller may provide Buyer a standard form ALTA Owner's Title Commitment and title exception documents ("Title Commitment"): as prepared by Stewart Title Company ("Title Company") at Seller's cost and delivered to Buyer within twenty (20) days following the Date of the fully executed Purchase Agreement being delivered to Seller. If the Title Commitment of the Premises shall disclose any defect or limitation of title which renders the title not merchantable (the "Objections"), Buyer shall give written notice thereof to Seller (the "Notice") within ten (10) days following Buyer's receipt of the Title Commitment. Seller shall at its expense be entitled to remove the Objections within a reasonable time (not to exceed thirty (30) days following Seller's receipt of the Notice, unless the parties mutually agree to extend such period), but shall have no obligation to cure any Objections. If Seller notifies Buyer in writing that Seller will not cure an Objection, Buyer shall have seven (7) days to notify Seller in writing that the Agreement is terminated, failing which Buyer shall be deemed to have waived the Objection(s). Any matters not specifically objected to in writing by Buyer shall be deemed to be approved by Buyer and constitute Permitted Exceptions. If Seller is unable to cure or remove an Objection prior to Closing, then the Buyer may elect to terminate this Agreement and the Earnest Money shall be immediately returned to Buyer, provided that Buyer shall additionally have the right to waive any of the Objections (which matters shall be deemed to be Permitted Exceptions) and to close in accordance with the terms and conditions of the Agreement, as amended. At Closing or as soon thereafter as possible, Buyer may order an ALTA owner's title insurance policy in the amount of the Purchase Price, issued by the Title Company at standard rates (the "Title Policy"), which Title Policy shall reflect only the Permitted Exceptions. Seller shall furnish such affidavits as are reasonably required by the Title Company for removal of all standard exceptions from the Title Policy, provided that Buyer shall be responsible for removal of the survey exception. For the purposes of this Agreement, the term "Permitted Exceptions" shall mean: (i) current taxes not yet due and payable; (ii) easements and restrictions of record which do not, in Buyer's discretion, materially interfere with or prohibit the Buyer's intended Use of the Premises; (iii) existing zoning laws, building codes, environmental laws and other statutes, ordinances or regulations generally applicable to the Premises (iv) any matters reflected on prior surveys, and (v) such other matters as may be reflected in the Title Commitment and as to which Buyer does not object within the time and in the manner required hereunder. Buyer shall pay for the Owner's title policy, any Buyer's Lender loan policy, any endorsements requested by Buyer or Lender, any mortgage tax and recording fee for recording Buyer's Lender's mortgage and other documents or other fees and taxes for recording the Seller's Warranty Deed to Buyer. Seller shall pay for preparation of the Warranty Deed and any fee for recording the deed.

1

2. No. 8 of the Purchase Agreement is hereby amended to state: Seller does not warrant that any of the items named in this No. 8 are located within the property. However, Seller does state that any of the items named in this No. 8 are included in this Purchase Agreement if within the property, including any other personal property or equipment not listed in No. 8 and located in the property at the time of Closing. Seller does not warrant the condition of any such personal property and such property is sold "AS IS" with warranty of fitness for a particular purpose or merchantability.

3. Add the following to No. 13 of the Purchase Agreement: Closing shall be an escrow closing through Stewart Title Company, 1700 West 82nd Street, Suite 100, Minneapolis, MN 55432 and the parties shall divide evenly the closing fees of the title company.

4. Delete from No. 15 of the Purchase Agreement: "and the Seller shall pay said agent the agreed upon commission."

5. Add to No. 15 of the Purchase Agreement: Seller shall pay the agent agreed upon commission at the time of Closing with Stewart Title.

6. Add to the Purchase Agreement after No. 16 as No. 17: Buyer and Seller agree to reasonably cooperate in seeking entry of an order by the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") approving this Agreement (the "Approval Order"). This Agreement is expressly contingent upon entry of an Approval Order by the Bankruptcy Court. If the Bankruptcy Court does not enter an Approval Order, this Agreement shall be null and void *ab initio* and the Buyer and Seller shall be restored to their positions, rights and interests the same as they had maintained immediately prior to the date of the first signature affixed to the Purchase Agreement.

7. No. 6 hereinabove in this Addendum to Purchase Agreement is further amended by adding: Seller to forward any known "Abstract" to said Buyer if abstract is available.


**SELLER & OWNER:**

**SKY VENTURES, LLC**

By: _____

Dated: _____


**BUYER:**

_____

Dated: _____


9085224v2

2

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Chapter 11

Sky Ventures, LLC                                         Case No. 14-42107-MER

                        Debtor.

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2014, I caused the following documents:

1.    NOTICE OF HEARING, MOTION AND MEMORANDUM OF LAW FOR
      AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF INTERESTS, LIENS,
      MORTGAGES, PRIVILEGES AND ENCUMBRANCES PURSUANT TO
      BANKRUPTCY CODE SECTIONS 105 AND 363; and

2.    NOTICE OF HEARING, MOTION AND MEMORANDUM OF LAW FOR ORDER (I)
      APPROVING SALE OF CERTAIN OF DEBTOR'S ASSETS FREE AND CLEAR OF
      LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) APPROVING
      REVISION, ASSUMPTION AND ASSIGNMENT OF SECOND AMENDED AND
      RESTATED MASTER LEASE AGREEMENT AND ASSUMPTION AND
      ASSIGNMENT AND REJECTION OF OTHER LEASES AND EXECUTORY
      CONTRACTS, (III) APPROVING PROPOSED COMPROMISE; AND  IN THE
      ALTERNATIVE (IV) REJECTING THE SECOND AMENDED AND RESTATED
      MASTER LEASE AGREEMENT; AND (V) FOR OTHER RELATED RELIEF

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-
notice of electronic filing to all persons registered for electronic notice, including the United
States Trustee.

I further certify that I sent the foregoing documents via overnight FedEx or overnight Express
Mail to the parties shown on the attached Chapter 11 Service List.

Dated: May 28, 2014                              WINTHROP & WEINSTINE, P.A.


                                                 By:  *s/ Jacob B. Sellers*
                                                 Daniel C. Beck, #192053
                                                 Jacob B. Sellers, #348879
                                                 225 South Sixth Street
                                                 Suite 3500
                                                 Minneapolis, MN  55402-4629
                                                 (612) 604-6400
                                                 dbeck@winthrop.com
                                                 jsellers@winthrop.com

                                                 and

                                                 HELLER, DRAPER, PATRICK, HORN
                                                  & DABNEY, L.L.C.
                                                 Douglas S. Draper, La. Bar No. 5073
                                                 Leslie A. Collins, La. Bar No. 14891
                                                 Greta M. Brouphy, La. Bar No. 26216
                                                 650 Poydras Street, Suite 2500
                                                 New Orleans, LA  70130-6103
                                                 Telephone: 504.299.3333/
                                                 Fax: 504.299.3399
                                                 ddraper@hellerdraper.com
                                                 lcollins@hellerdraper.com
                                                 gbrouphy@hellerdraper.com

                                                 **Counsel for Debtor**

9119055v1

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 11 |
| Sky Ventures, LLC | Case No. 14-42107-MER |
| Debtor. | |

## CHAPTER 11 SERVICE LIST

| | | |
|---|---|---|
| A+ SERVICES<br>4481 N FRONTAGE RD<br>ROCHESTER MN 55901 | AARON POHJOLA DBA AP<br>SERVICES OF DULUTH<br>1806 W ARROWHEAD<br>ROAD<br>DULUTH MN 55811 | ALPHA CONTAINER<br>4180 160TH STREET E<br>ROSEMOUNT MN 55068 |
| BRIGGS AND MORGAN<br>ATTN JASON R ASMUS<br>80 S EIGHTH ST<br>2200 IDS CTR<br>MINNEAPOLIS MN 55402<br>*ECF* | CARLSON<br>REFRIGERATION<br>602 OGDEN AVENUE<br>SUPERIOR WI 54880 | CRAIG S GANZ ESQ<br>GALLAGHER & KENNEDY<br>PA<br>2575 E CAMELBACK RD<br>STE 1100<br>PHOENIX AZ 85016 |
| CUSTOM CREATIONS<br>REMODELING<br>1321 ANDOVER BLVD STE<br>112<br>ANDOVER MN 55304 | DELAGET LLC<br>6200 MINERAL POINT RD<br>SUITE 102<br>MADISON WI 53705 | GEOFF MICHAEL GROUP<br>1713 AVOCET LANE<br>MOUND MN 55364 |
| HYDRO RESTORATION<br>50 GLEN EDGE RD<br>DELLWOOD MN 55110 | IPHFHA<br>7829 E ROCKHILL STREET<br>STE 201<br>WICHITA KS 67206-3918 | JANE E HEATH ESQ<br>DUGGAN SMITH & HEATH<br>LLP<br>560 HIGUERA ST STE B<br>SAN LUIS OBISPO CA<br>93401 |

| | | |
|---|---|---|
| KFC NATIONAL COUNCIL & ADVERTISING COOP PO BOX 642474 PITTSBURGH PA 15264-2474 | KFC ROYALTY PO BOX 203805 DALLAS TX 75320-3805 | KFC UPPER MIDWEST ADV ASSOC ATTN: APRIL JOLLEY C/O AFA KRAUSE 45 WEST 10000 SOUTH STE 201 SANDY UT 84070 |
| KFC YRSG HIRING ZONE PO BOX 203805 DALLAS TX 75320-3805 | KFC YRSG MERIT KFC PO BOX 203805 DALLAS TX 75320-3805 | LAKE REGION ELECTRIC 4601 113TH AVENUE NE SPICER MN 56288 |
| LEGEND MECHANICAL 12467 BOONE AVENUE STE 1 SAVAGE MN 55378 | MACGILLIVRAY RANCH LLC 225 LOS ROBLES TEMPLETON CA 93465 | MATTHEW C HELLAND ESQ NICHOLS KASTER LLP ONE EMBARCADERO CTR STE 720 SAN FRANCISCO CA 94111 |
| MATTHEW H. MORGAN ESQ 4600 IDS CENTER 80 SOUTH 8TH STREET MINNEAPOLIS MN 55402 | MEIER ELECTRIC INC OF MARSHALL 1004 W MAIN ST PO BOX 455 MARSHALL MN 56258 | MTG 8555 123RD STREET WEST SAVAGE MN 55378 |
| PAR TECH INC PO BOX 301175 DALLAS TX 75303-1175 | PEPSI 75948 PO BOX 75948 CHICAGO IL 60675 | PIZZA HUT C/O WILLIAM EVANOFF SIDLEY AUSTIN LLC 1 S DEARBORN ST CHICAGO IL 60603 |
| PIZZA HUT INC ST LOUIS/YRSG PO BOX 955641 ST LOUIS MO 63195-5641 | PRAXAIR DISTRIBUTION INC 26 BEACH AVE LA GRANGE PARK, IL 60526 *RETURNED AS NOT FOUND, NO NEW ADDRESS YET* | QUIKORDER INC 351 WEST HUBBARD STREET STE 501 CHICAGO IL 60654 |

| | | |
|---|---|---|
| ROYAL ROOFING<br>PO BOX 248<br>MONTICELLO MN 55362 | SPIRIT MASTER FUNDING LLC<br>ATTN COMPLIANCE DEPT<br>16767 N PERIMETER DR STE 210<br>SCOTTSDALE AZ 85260-1042<br>***ECF*** | SPIRIT REALTY CAPITAL<br>16767 N PERIMETER DRIVE<br>SUITE 210<br>SCOTTSDALE AZ 85260 |
| SUMMIT FACILITY & KITCHEN SERV LLC<br>8818 7TH AVENUE N<br>GOLDEN VALLEY MN 55427 | TACO BELL CORP PO BOX 116946<br>ATTN PYMT PROCESSING PO BOX 116946<br>ATLANTA GA 30368-6946<br>***RETURNED AS NOT FOUND, NO NEW ADDRESS YET*** | TRUEX ELECTRIC<br>PO BOX 346<br>ROCKWELL IA 50469 |
| UFPC SMALLWARES CONNECTION<br>PO BOX 73184<br>CLEVELAND OH 44193 | XCEL ENERGY - MPLS MN<br>PO BOX 9477<br>MINNEAPOLIS MN 55484-9477 | PIZZA HUT OF AMERICA, INC.<br>c/o JOHN J. MURPHY<br>14841 DALLAS PARKWAY<br>DALLAS TX 75254 |
| IRS<br>380 JACKSON STREET STE 650<br>ST PAUL MN 55101 | IRS<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 | MINNESOTA REVENUE<br>PO BOX 64651<br>ST PAUL MN 55164-0651 |
| MN DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT<br>332 MINNESOTA STREET<br>ST PAUL MN 55101-1351 | UNITED STATES ATTORNEY<br>DISTRICT OF MINNESOTA<br>300 S 4TH STREET STE 600<br>MINNEAPOLIS MN 55415 | MINNESOTA DEPARTMENT OF REVENUE<br>600 NORTH ROBERT STREET<br>ST. PAUL MN 55101-2228 |
| ST. LOUIS COUNTY AUDITOR<br>100 N 5TH AVE W<br>ROOM 214<br>DULUTH MN 55802 | WISCONSIN DEPARTMENT OF REVENUE<br>SALES AND USE TAX<br>2135 RIMROCK ROAD<br>MADISON, WI 53713 | ERIC GOODMAN<br>BAKER HOSTETLER<br>PNC CENTER<br>1900 EAST 9TH ST.,<br>SUITE 3200<br>CLEVELAND, OH 44114-3482 |

| IOWA DEPARTMENT OF REVENUE SALES AND USE TAX HOOVER STATE OFFICE BUILDING 1305 E WALNUT DES MOINES, IA 50319 | TOURISM TAX CITY OF DULUTH 411 W 1ST STREET TREASURER'S OFFICE DULUTH, MN 55802 | BRENT WEISENBERG BALLARD SHAHR LLP 425 PARK AVE NEW YORK, NY 10021 |
| --- | --- | --- |

9081150v1