## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                              Chapter 11

Sky Ventures, LLC                                   Case No. 14-42107-MER

                          Debtor.

## NOTICE OF HEARING AND MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF INTERESTS, LIENS, MORTGAGES, PRIVILEGES AND ENCUMBRANCES PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363

### NOTICE OF HEARING

Sky Ventures, LLC ("Debtor"), through its undersigned attorneys, respectfully moves this Court (the "Motion") for an order (the "Order") authorizing the Debtor to sell all of Debtor's real property located at 964 Highway 15 South, Hutchinson, McLeod County, Minnesota described more fully on Exhibit A to the Agreement of Purchase and Sale ("Purchase Agreement") attached hereto as **Exhibit 1**, together with all improvements thereon and all rights, appurtenances, easements, and privileges thereto, including all right, title and interest of the Debtor in and to any streets, rights of way, alleys, strips or gores of land adjoining the real property and any award made or to be made in lieu thereof ("Property") free and clear of all interests, liens, mortgages, privileges and encumbrances to Sherman Partners, LLC ("Sherman Partners") or a higher bidder at an auction conducted under the auspices of this Court (Sherman Partners or such higher bidder being hereafter referred to as "Purchaser") for the purchase price of Three Hundred Thirty-Five Thousand Dollars and No/100 ($335,000.00) ("Purchase Price"), on the terms and conditions set forth in the Purchase Agreement. For purposes of this Motion, all capitalized terms not otherwise defined shall have the meaning set forth in the Purchase Agreement.

The court will hold a hearing on this Motion at **1:00 p.m. on July 8, 2014**, before the Honorable Michael Ridgeway, Courtroom 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

Any response to this motion must be filed and served not later than July 3, 2014, which is five (5) days (including Saturdays, Sundays and holidays) before the date set for the hearing. Unless a response opposing the motion is timely filed, the Court may grant the motion without a hearing.

## JURISDICTION

1.      Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction: (i) to hear and determine the Motion; and (ii) over the persons and property affected.  The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue for this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND AND PROCEDURAL HISTORY

2.      On May 14, 2014 (the "Petition Date"), the Debtor filed the captioned Chapter 11 case ("Case").  The Debtor continues to operate its business and manage its property as a debtor-in-possession, pursuant to §§1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed, and no official committee of creditors has been established.

3.      The Debtor, for the past year, has actually been marketing its properties to potential buyers or investors.  For a history and the reason for the sale of the Property, the parties are directed to the Affidavit of Barry M. Zelickson and the Declaration of Christopher J. Kelleher.

## APA ACCEPTED BY THE SELLER AND THE LENDER

4.      The Debtor has entered into a Purchase Agreement with Sherman Partners.  The terms of the Purchase Agreement are standard terms between a seller and a third party buyer.

The Purchaser is not an affiliate or a related party to the Debtor.  In fact, the solicitation of offers for the Property was handled by third party brokers who are seeking a commission incident to the sale as included herein.

## BID PROCEDURES TO BE EMPLOYED TO MAXIMIZE VALUE

5.      The Debtor has implemented the following bid procedures ("Bid Procedures") described in this Motion in an attempt to increase the sales price in excess of that set forth in the Purchase Agreement.  The Bid Procedures being implemented are the following:

### Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose thereunder, a party interested in the Property (a "Potential Bidder") must deliver a signed, sealed, proposed Purchase Agreement for the Property to the Seller's counsel: Douglas S. Draper, Heller, Draper, Patrick, Horn & Dabney, LLC, 650 Poydras Street, Suite 2500, New Orleans, Louisiana  70130 (ddraper@hellerdraper.com) on or before **5:00 p.m. (Central Time), on _____, 2014,** in the same form and substance of the Purchase Agreement attached hereto, as well as provide the appropriate deposit (as outlined below) for deposit to the trust account of the counsel for the Seller (contact Greta M. Brouphy (504) 299-3351 for wiring instructions).

### Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (a)-(g) under the Bid Requirements section below, and that the Seller determines is reasonably likely to be able to consummate a sale if selected as a Successful Bidder (hereafter defined) at the open auction.

Upon receipt from a Potential Bidder of the information, documents and cash consideration required under Bid Requirements subparagraphs (a)-(g) below, the Seller, as soon as practicable, shall determine and notify each Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder, and whether such Bidder may participate at the auction.

### Bid Process

The Seller shall: (a) determine whether a Potential Bidder is a Qualified Bidder; (b) receive offers from Potential Bidders; (c) negotiate any offers made to purchase the Property; and (d) determine the Qualified Bidder(s) (collectively, the "Bid Process").  The Seller shall have the right to adopt such other rules for the Bid Process that will better promote the goals of the Bid Process and that are not inconsistent with any of the other provisions thereof, the provisions of the Purchase Agreement or requirements of any Bankruptcy Court order.

**Bid Deadline**

**The deadline for submitting bids by a Potential Bidder shall be July 3, 2014, at 5:00 p.m. (Central Time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Potential Bidder that desires to acquire the Property shall submit a sealed, conforming Purchase Agreement for the Property, along with any additional information that supports the Purchase Agreement and the financial wherewithal of the Potential Bidder, along with the deposit (hereafter defined) by wire transfer or cashier's check (the "Bid") and shall deliver written copies (including soft copies by email) of the Bid to: (i) counsel for the Seller: Heller, Draper, Patrick, Horn & Dabney, L.L.C., 650 Poydras Street, Suite 2500, New Orleans, Louisiana 70130, Attn: Douglas S. Draper, Esq. (ddraper@hellerdraper.com). A Potential Bidder shall not disclose the contents of its Bid(s) to any parties other than as set forth in this paragraph, and shall maintain the confidentiality of its sealed Bid(s).

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

**Bid Requirements**

To be eligible to participate in any auction, each Bid and each Bidder submitting a Bid must be determined by the Seller to satisfy each of the following conditions:

(a)    Deposit. Each Bid must be accompanied by a deposit (the "Deposit") in the form of a certified check payable to the order of Heller, Draper, Patrick, Horn & Dabney, LLC, or wire transfer, in the amount of Thirty Thousand Dollars and No/100 ($30,000.00) to be held as a deposit and provide proof of funds for the balance of the Bid showing availability to close the purchase of the Property on or before the Closing Date.

(b)    Irrevocable. Each Bid must be irrevocable until five (5) business days after both the approval of the sale of the Property (the "Proposed Sale") by the Bankruptcy Court (to the extent required) and the closing of such sale (the "Termination Date").

(c)    Terms of Bid.

(i)    Property. The minimum cash only bid (the "Cash Bid Price") for the Property is Three Hundred Forty-Five Thousand Dollars and No/100 ($345,000.00), which is Ten Thousand Dollars and No/100 ($10,000.00) in excess of the Purchase Price set forth in the Purchase Agreement.

(ii)    No Contingencies. Each Bid may not be conditioned on obtaining financing or any internal approval, third party approval, or on the outcome or review of due diligence, that has not been satisfied as of the time of the auction (hereafter defined), but may be subject to the accuracy in all material respects at the Closing of specified representations and warranties or the satisfaction in all material respects at the Closing of specified conditions, none of which shall be more burdensome to the Seller than

4

those set forth in the Purchase Agreement or as otherwise agreed to by the Seller.

(iii) <u>Closing</u>.  All Bids must provide for a closing ("<u>Closing</u>") no later than the Closing Date provided in the Purchase Agreement, unless otherwise provided in the accepted Bid or by Seller in its sole discretion or unless otherwise ordered by the Bankruptcy Court.

(iv) <u>Relationships with the Debtor</u>.  Each Bid must disclose the Bidder's direct or indirect relationship, interest, or affiliation in or with the Seller, if any.

(d) <u>Purchase Agreement</u>.  Each Bid must include a copy of the Purchase Agreement submitted by such Bidder marked to show all changes to the Purchase Agreement attached hereto, consistent with the provisions of these Bid Procedures.

(e) <u>No Fees Payable to Qualified Bidder</u>.  Each Bid may not request or entitle the Bidder(s) to, nor may the Seller pay or agree to pay, any breakup fee, termination fee, expense reimbursement or similar type of payment or credit to any Bidder(s).  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

(f) <u>Proof of Financial Ability to Perform/Financial Assurance</u>. Each Potential Bidder must provide written evidence reasonably acceptable to the Seller, including current financial statements and a description of equity and debt financing sources (although such financing sources shall not be conditions to closing) to be used to close the transaction as set forth in the Bid, and that demonstrates that the Potential Bidder(s) has the necessary financial ability to close the contemplated transaction (including access to capital totaling at least the Purchase Price).  The Seller may require additional financial information to demonstrate that a Bidder may perform its obligations.

A Bid received from a Potential Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "<u>Qualified Bid</u>," if the Seller believes, in its discretion, that such a Bid would be consummated if selected as the Successful Bid (hereafter defined). In the event that any Bid is determined by the Seller not to be a Qualified Bid, such Bidder shall be refunded its Deposit within two (2) business days after that determination.

**Sale Process**

If one or more Qualified Bids is received under seal and is acceptable to the Seller, the Seller and/or the Bankruptcy Court shall conduct an open auction (the "<u>Auction</u>") to determine the prevailing bid.  The Purchaser and all of those parties that have submitted a Qualified Bid may participate in the Auction in the manner set forth herein.

If there are no Qualified Bids on the Property, the Seller may proceed directly to the Final Sale Hearing seeking approval of the Purchase Agreement with the Purchaser.

**Auction Procedure**

Any Auction of the Property shall be conducted according to the following procedures:

     (a)     <u>Participation at the Auction.</u>

Only a Qualified Bidder that has submitted a Qualified Bid for the Property by the Bid Deadline is eligible to participate at any Auction for the Property.  Notwithstanding the foregoing, any Potential Bidder who has submitted a Qualified Bid conditioned on obtaining financing or any internal approval, third party approval, or on the outcome or review of due diligence that has not been satisfied as of the time of the submission of its bid, shall certify immediately prior to the Auction that all such conditions have been satisfied as a condition to being allowed to bid at the Auction.  In the absence of a certification required by the preceding sentence, the bid of such Qualified Bidder will no longer be deemed a Qualified Bid, and such bidder shall not be allowed to participate in the Auction.

Sherman Partners shall be deemed to be a Qualified Bidder, provided that Sherman Partners has not terminated the Purchase Agreement prior to the Auction.

     (b)     <u>Auction.</u>

**The Auction shall be held on[xxx], at 9:00 a.m. (Central Time) at United States Bankruptcy Court, District of Minneapolis, Courtroom of Judge Michael E. Ridgway, 7W United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415 or such other place as determined by the Court and/or Seller.**

At the commencement of the Auction, the Seller shall describe the terms of the highest Qualified Bid for the Property being auctioned, which shall serve as the initial Qualified Bid.

     (c)     <u>Terms of Subsequent Bids.</u>

An "<u>Overbid</u>" is any bid made at the Auction subsequent to the Seller's announcement of the highest Qualified Bid.  To submit an Overbid for purposes of the Auction, a Qualified Bidder must comply with the following conditions:

     (i)     *Subsequent Minimum Overbid Increment.*

Any Overbids after the highest Qualified Bid shall be made in monetary increments of Two Thousand Dollars and No/100 ($2,000.00.)

     (ii)     *Remaining Terms are the Same as for Qualified Bids.*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided that the Bid Deadline shall not apply.

(iii)   *Duration of an Overbid and Selection of Backup Bidder*

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (A) the Seller accepts a higher Qualified Bid as an Overbid and (B) such Overbid is not selected as the next highest or otherwise best offer (the "Backup Bid") after the selection of the Successful Bid (as defined below). The Qualified Bidder with the selected Backup Bid, shall have the option, but not the obligation, to purchase the Property under the terms of the Purchase Agreement included in the Qualified Bid for the amount of its last bid made at the Auction. The Deposit in connection with the Backup Bid, will be held until one (1) business day after the closing to the Successful Bidder.

(iv)   *Consideration of Overbids.*

The Seller, subject to approval of the Bankruptcy Court, reserves the right, in its discretion, to make adjournments in the Auction to, among other things: (A) facilitate discussions between the Seller and an individual Qualified Bidder(s); and (B) allow individual Qualified Bidder(s) to consider how they wish to proceed, it being understood that the Seller's consideration of any Overbid will include matters in addition to the economic consideration offered by such Overbid.

(d)     Additional Procedures.

The Seller, in its discretion, may adopt other or additional rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures herein or with the Purchase Agreement, as applicable.

(e)     Consent to Jurisdiction as Condition to Bidding.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Purchase Agreement, as applicable.

(f)     Closing the Auction.

The Auction shall close when there are no further bids received for the Property. Upon conclusion of the bidding, the Auction shall be closed, and the Seller shall immediately (i) review each Qualified Bid and the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale; and (ii) upon such review, the Seller or the Bankruptcy Court shall immediately identify (i) the successful bidder (the "Successful Bidder") and the successful bid (the "Successful Bid"); (ii) the Backup Bid; and (iii) advise the Qualified Bidders of such determination.

7

**Final Sale Hearing**

The Final Sale Hearing on the Sale Motion will be held on the ___ day of ____, 2014 at ____ _.m. or immediately after the Auction at the United States Bankruptcy Court for District of Minneapolis, 7W United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415.

At the Final Sale Hearing, the Seller shall present to the Bankruptcy Court the Successful Bid and the Backup Bid and seek approval thereof.

## STATUTORY PREDICATES

6.      This Motion is brought pursuant to the authority of 11 U.S.C. §§105 and 363(b)(1), 363(f) and 363(m) and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

7.      Pursuant to Sections 105, 363(b)(1), 363(f) and 363(m), the Debtor is seeking an order authorizing it to enter into the sale of the Property for a total price of Three Hundred Thirty-Five Dollars and No/100 ($335,000.00), or such other price if a higher price is achieved at the Auction requested in this Motion, subject to all closing costs, deductions and prorations as provided in the Purchase Agreement, to Purchaser.

8.      At the Closing, the Purchaser shall assume, and thereafter pay, perform and discharge when due, only such liabilities that first accrue or arise after the Closing Date and that relate to any of the Property.

9.      The Debtor requests that the sale of the Property be made free and clear of all interests (including any successor, transferee or similar liability), liens (including, but not limited to, any and all "liens" as defined in Bankruptcy Code § 101(37)), claims (including, but not limited to, any and all "claims" as defined in Bankruptcy Code § 101(5)), liabilities, mortgages, deeds, trusts, guarantees, security agreements, security interests, pledges, privileges, options, easements, servitudes, encroachments, hypothecations, charges, obligations, rights, restrictions,

charges and encumbrances in or with respect to any of the Property including, without limitation, any encumbrances and without any successor, transferee or similar liability on the part of the Purchaser, and the Order shall expressly direct the record cancellation of all liens and judgments as to the Property.

10.    In connection therewith, the Debtor respectfully requests that the Court find that the Purchaser is not a successor to the Debtor and that the sale of the Property pursuant to the Order does not constitute a de facto merger or consolidation of the Debtor and Purchaser, or a continuation of the Debtor's business, and that Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Property.  The finding that the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Property is consistent with applicable law regarding the effect of sales under 11 U.S.C. § 363(b).  *See e.g. In Re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir. 2003*); Cibulka v. Trans World Airlines, Inc.*, 92 Fed.Appx. 366, 368 (8th Cir. 2004); *United Mine Workers v. Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir. 1996), certiorari denied 520 U.S. 1118, 117 S.Ct. 1251, 137 L.Ed.2d 332 (1997).

11.    No successor, transferee or similar liability claim, shall bear against or attach or otherwise affect the Property or the Purchaser, and the holders of all such encumbrances, including any successor, transferee or similar liability claims, all shall be permanently enjoined from pursuing any such encumbrance and/or any successor, transferee or similar liability claim against the Property or the Purchaser.

12.    The Purchaser shall have no successor liability with respect to claims or administrative expenses arising or accruing prior to or on the Closing Date, unless otherwise expressly assumed by Purchaser, and shall not be deemed a successor of Seller within the

meaning of any revenue, pension, ERISA, COBRA, tax, labor or environmental law, rule or regulation or any products liability.

13.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  As a general matter, a judge determining a Section 363(b) application [should] find from the evidence presented before him at the hearing a good business reason to grant such an application."  *In re Lionel Corp.*, 722 F.2d 1-063, 1071 (2d Cir. 1983). Certain factors pertinent to this analysis have been articulated; specifically, the Court should consider whether:

(1)     a sound business purpose justifies the sale;

(2)     accurate and reasonable notice of the sale was provided;

(3)     the price to be paid is adequate, i.e., fair and reasonable; and

(4)     the sale is in good faith, i.e., there is an absence of any lucrative deals with insiders.

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990).  The proposed sale by the Debtor to the Purchaser comports with each of these requirements.

14.     The proposed sale of the Property and the Purchase Price thereof are fair and reasonable and are the result of arm's-length negotiations between the parties.  The agreement represents the best offer received to date by the Debtor.

15.    Satisfaction of any of the requirements delineated in section 363(f) allows the sale of property free and clear of all liens, claims, encumbrances and other interests.  The Debtor submits that any lien, claim, encumbrance or other interest that is not specifically assumed - should there be such claims - will satisfy at least one of the five conditions of section 363(f). Accordingly, the Debtor requests that the Property be sold free and clear of all liens, claims, and encumbrances and other interests, with such claims attaching to the proceeds of the sale, if any.

16.    If a purchaser is in good faith, section 363(m) protects the parties in the event of a reversal or modification on appeal of the authorization of a sale under section 363(b).   In determining whether a purchaser has acted in good faith, courts look to the integrity of the purchaser's conduct in the course of the legal proceedings.[1] The Debtor submits that Purchaser has acted in good faith and the transaction should be afforded protection under section 363(m).

17.    Considering the good faith of the Purchaser and the reasonableness of the Purchase Price, the Debtor requests that this Court find that good cause exists to authorize the consummation of the sale of the Property without subjecting the Order to a stay of execution, as permitted under Federal Rules of Bankruptcy Procedure 7062 and 6004(h).

18.    The Debtor requests that the Court find that the terms and conditions of the Purchase Agreement are an integral part of the sale of the Property.  In view of: (i) the good faith of the Purchaser, (ii) the reasonableness of the Purchase Price, and (iii) the fact that the terms and conditions of the Purchase Agreement are an integral part of the sale of the Property, the Debtor also requests that the Order authorizing the sale provide, pursuant to 11 U.S.C. § 363(m), that the reversal or modification on appeal of the Order authorizing the sale hereunder shall not affect the

---

[1] *See, e.g., In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 147-48  (3rd Cir. 1986).

validity or enforceability of the sale or any of the terms and conditions of the Purchase Agreement. *See In re Trism*, 328 F.3d 1003 (8th Cir. 2003).

19.    The Debtor requests that this Court declare that, without limiting the generality of the foregoing, the Order shall constitute all approvals and consents, if any, required by the laws of the State of Minnesota, with respect to the implementation and consummation of the Purchase Agreement and the Order and the transactions contemplated therein, and authorize Barry M. Zelickson, as Senior Vice President of the Debtor, to execute any and all documentation contemplated by the Purchase Agreement.

20.    The Debtor requests that this Court declare that the Debtor, by and through Barry M. Zelickson, be authorized to execute and deliver to Purchaser any and all conveyance and transfer documents and other agreements described in the Purchase Agreement and, upon Closing, the Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Property or a bill of sale transferring good and marketable title in such Property to Purchaser and ordering and directing each and every federal, state and local governmental agency or department to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and the Order.

21.    The Debtor requests that this Court declare that the Purchase Agreement and all other documents, agreements and instruments necessary to effectuate and consummate the transactions contemplated by the Purchase Agreement, together with the terms and provisions of the Order, are specifically enforceable against and binding upon, and shall not be subject to rejection or avoidance by, the Debtor, its creditors and all other parties in interest and any assigns, including without limitation any trustee, responsible person, estate administrator,

representative or similar person hereinafter appointed for or in connection with any of the Debtor's estate or affairs in this or any subsequent or converted case under the Bankruptcy Code involving the Debtor.

22.      The Debtor further requests that, out of the closing of the sale, it be authorized to pay the real estate broker fees of Diversified Acquisitions, Inc. and Mid-America Real Estate Minnesota, LLC.  Pursuant to the terms of the Debtor's pre-petition contracts with the real estate brokers, the fees will be seven percent (7%) of the sales price to be split 50/50 between the two brokers.  The brokers are not related to or affiliated with the Debtor.

## WAIVER OF RULE 6004(H)

23.      The Debtor requests that this Court provide for a waiver of the fourteen (14) day stay of the order approving the sale of the Property under Federal Rules of Bankruptcy Procedure 6004(h) such that the sale of the Property to the Purchaser can close within the timeframe set forth in the Purchase Agreement.

## NOTICE

24.      Notice of this Motion has been given to all creditors of the Debtor, the United States Trustee, all prospective bidders, all taxing authorities and all parties requesting notice. The Debtor respectfully requests a finding that notice of the Motion and the Sale Hearing is sufficient and provides a reasonable opportunity for objections to the Motion, or higher offers for the Property.

**WHEREFORE**, Sky Ventures, LLC hereby moves this Honorable Court, after notice and hearing, to make all findings requested in this Motion and, considering those findings and applicable law, to enter the Order:

(1)      Approving the Purchase Agreement and the terms and conditions thereof and the sale of the Property to the Purchaser;

(2)      Authorizing the Debtor, and without any further corporate or other action by the Debtor or any officer, person or board of directors thereof, to execute and to perform the Purchase Agreement and, in connection therewith, to sell the Property to Sherman Partners (or any winning bidder at the Auction), for the sum Three Hundred Thirty-Five Thousand Dollars and No/100 ($335,000.00), or such higher price determined at the Auction, free and clear of any and all encumbrances and free and clear of any successor, transferee or similar liability claim against the Property or the Purchaser, and on the terms and conditions set forth in the Purchase Agreement and in this Motion;

(3)      Approving the Bid Procedures that were employed;

(4)      Authorizing the Debtor to consummate the sale of the Property under 11 U.S.C. § 365, as applicable, pursuant to this Motion and the Purchase Agreement immediately, without delay, to the Purchaser, without the Order being subject to an automatic stay, as permitted under Federal Rules of Bankruptcy Procedure 7062 and 6004(h) or otherwise;

(5)      Providing that no encumbrance, and no successor, transferee or similar liability claim, shall attach or otherwise affect the Property or the Purchaser;

(6)      Authorizing the Debtor to execute any and all conveyance and transfer documents, resolutions, agreements, releases and other agreements described in the Purchase Agreement, and to take any and all such actions necessary and appropriate in its discretion to accomplish the transactions authorized therein without any further order of this Court;

(7)      Declaring that, upon Closing, the Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of title to the Property and a bill of sale transferring good and marketable title in such Property to Purchaser and ordering and directing each and every federal, state and local governmental agency or

department to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and the Order;

(8)     Declaring that the Purchase Agreement and all other documents, agreements and instruments necessary to effectuate and consummate the transactions contemplated by the Purchase Agreement together with the terms and provisions of the Order are specifically enforceable against and binding upon, and shall not be subject to rejection or avoidance, by the Debtor, its creditors and all other parties in interest and any assigns, including without limitation any trustee, responsible person, estate administrator, representative or similar person hereinafter appointed for or in connection with the Debtor's estate or affairs in this or any subsequent or converted case under the Bankruptcy Code involving the Debtor;

(9)     Declaring that the terms and conditions of the Purchase Agreement are an integral part of the sale of the Property and that, in view of: (i) the good faith of the Purchaser, (ii) the reasonableness of the Purchase Price, and (iii) the fact that the terms and conditions of the Purchase Agreement are an integral part of the sale of the Property, the reversal or modification on appeal of the Order authorizing the sale hereunder shall not affect the validity or enforceability of the sale or any of the terms and conditions of the Purchase Agreement, pursuant to 11 U.S.C. § 363(m);

(10)    Allowing and authorizing the Debtor to pay the real estate commission incident to the sale to Sherman Partners in an amount of seven percent (7%) of the sales price; and

(11)    All other relief requested above and as is just and equitable.

Dated: June 2, 2014                       LAPP, LIBRA, THOMSON STOEBNER & PUSCH, CHTD.

By: */e/ Ralph V. Mitchell*
Ralph V. Mitchell (#184639)
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone:  612.338.5815
Fax:  612.338.6651
rmitchell@lapplibra.com


HELLER, DRAPER, PATRICK, HORN
 & DABNEY, L.L.C.
Douglas S. Draper, La. Bar No. 5073
(Pro Hac Vice Pending)
Leslie A. Collins, La. Bar No. 14891
(Pro Hac Vice Pending)
Greta M. Brouphy, La. Bar No. 26216
(Pro Hac Vice Pending)
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
Telephone: 504.299.3333/
Fax: 504.299.3399
ddraper@hellerdraper.com
lcollins@hellerdraper.com
gbrouphy@hellerdraper.com

**Counsel for Debtor**

Exhibit 1

<u>Purchase Agreement</u>

## AGREEMENT OF PURCHASE AND SALE

This **AGREEMENT OF PURCHASE AND SALE** (the "Agreement"), is made and entered into by and between **Sky Ventures, LLC, a Delaware limited liability company** (the "Seller"), and **Sherman Partners, LLC**, a Delaware limited liability company (the "Buyer").

### WITNESSETH

**WHEREAS**, Seller owns and desires to sell all right, title and interest in and to the Premises (as hereinafter defined) and Buyer desires to purchase the Premises on the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, for and in consideration of the mutual covenants and agreements herein contained, the Earnest Money (as hereinafter defined) and other valuable consideration, the receipt and sufficiency of which are acknowledged, Seller and Buyer covenant and agree as follows:

      1.     Seller agrees to sell and Buyer agrees to purchase the following described real property (the "Premises): **All of the Seller's real property located at 964 Highway 15 South, Hutchinson, McLeod County, Minnesota. Said property contains approximately 24,583 square feet and is legally described on Exhibit "A" attached hereto and made a part hereof,** together with all improvements thereon and all rights, appurtenances, easements, and privileges thereto, including all right, title and interest of the Seller in and to any streets, rights of way, alleys, strips or gores of land adjoining the Premises and any award made or to be made in lieu thereof.

      2.     **PURCHASE PRICE AND EARNEST MONEY:** The total purchase price shall be **Three Hundred Thirty-Five Thousand Dollars ($335,000.00)** to be paid as follows:

### All Cash at Closing

Within **five (5)** days of the Effective Date (the date on which this Agreement was last signed or initialed, whichever is later) of this Agreement, Buyer shall deliver to and Seller shall receive acknowledgment from Stewart Title – Commercial Division, 1700 W. 82nd Street, Minneapolis, MN 55431 (the "Escrow Agent") that the Escrow Agent holds the sum of **Five Thousand Dollars ($5,000.00)** as earnest money (the "Initial Earnest Money") to be held in an non- interest bearing account and in accordance with the terms hereof. The earnest money shall apply to the purchase price at closing, or otherwise be utilized in accordance with the terms hereof. Any escrow charges or fees shall be equally divided between Seller and Buyer at Closing.

Seller and Buyer agree to give the Escrow Agent written instruction as to the disposition of the Earnest Money notwithstanding any other terms of this Agreement providing for forfeiture or refund of the Earnest Money. In the event of any dispute between the Seller and Buyer as to a default or breach of this Agreement, or in the event the parties cannot agree as to the disposition of the Earnest Money, Seller and Buyer agree the Escrow Agent may be released of any further obligation under this Agreement by tendering any funds received by the Escrow Agent into a court of competent jurisdiction in an action in the nature of an interpleader for resolution by said court of the ultimate disposition of the Earnest Money. Seller and Buyer further agree to hold the Escrow Agent harmless for any and all costs and expenses, including attorneys' fees, incurred by the Escrow Agent as a result of the Escrow Agent's position as escrow agent for the Earnest Money under the terms of this Agreement.

      3.     **USE OF THE PREMISES:** Buyer intends to utilize the Premises for a retail building, together with parking and vehicular and pedestrian ingress and egress as deemed adequate in Buyer's sole judgment (the "Use").

4.    **TITLE:** Seller warrants and represents to Buyer that Seller owns fee simple title to the Premises and has the authority and is empowered to consummate the sale of the Premises pursuant to this Agreement. On or before the date of Closing (as hereinafter defined), title to the Premises shall be good and marketable and free and clear of all leases, liens, encumbrances, easements, restrictions, and other conditions, excepting only Permitted Exceptions, as defined below. Within thirty (30) days following the Effective Date, Seller shall use its best efforts to deliver to Buyer for Buyer's review a standard form ALTA Owner's Title Commitment (the "Title Commitment"), issued through Escrow Agent by Stewart Title Guaranty Company (the "Title Company") to insure Buyer's interest in the Premises along with copies of all documents referred to as exceptions therein. If the Title Commitment or Survey (as hereinafter defined) of the Premises, as required by Paragraph 5 below, shall disclose any defect or limitation of title unacceptable to Buyer (the "Objections"), Buyer shall give written notice thereof to Seller (the "Notice") within fifteen (15) days following Buyer's receipt of the Title Commitment and Survey, whichever lasts occurs. Seller shall at its expense be entitled to remove the Objections within a reasonable time (not to exceed thirty (30) days following Seller's receipt of the Notice, unless the parties mutually agree to extend such period), but shall have no obligation to cure any Objections. If Seller notifies Buyer in writing that Seller will not cure an Objection, Buyer shall have seven (7) days to notify Seller in writing that the Agreement is terminated, failing which Buyer shall be deemed to have waived the Objection(s). Any matters not specifically objected to in writing by Buyer shall be deemed to be approved by Buyer and constitute Permitted Exceptions. If Seller is unable to cure or remove an Objection prior to Closing, then the Buyer may elect to terminate this Agreement and the Earnest Money shall be immediately returned to Buyer, provided that Buyer shall additionally have the right to waive any of the Objections (which matters shall be deemed to be Permitted Exceptions) and to close in accordance with the terms and conditions of this Agreement. At Closing or as soon thereafter as possible, Buyer shall be furnished a standard form ALTA Owner's Title Insurance Policy in the amount of the Purchase Price, issued by the Title Company at standard rates (the "Title Policy"), which Title Policy shall reflect only the Permitted Exceptions. Seller shall furnish an owner's affidavit as is reasonably required by the Title Company for removal of all standard exceptions from the Title Policy, provided that Buyer shall be responsible for removal of the survey exception. For the purposes of this Agreement, the term "Permitted Exceptions" shall mean: (i) current taxes not yet due and payable; (ii) easements and restrictions of record which do not, in Buyer's discretion, materially interfere with or prohibit the Buyer's intended Use of the Premises; (iii) existing zoning laws, building codes, environmental laws and other statutes, ordinances or regulations generally applicable to the Premises, and (iv) such other matters as may be reflected in the Title Commitment or Survey and as to which Buyer does not object within the time and in the manner required hereunder.

5.    **SURVEY:** Buyer shall, within sixty (60) days of the Effective Date, obtain an ALTA boundary and topographical survey prepared in accordance with Buyer's standard specifications by a surveyor licensed in the State of Minnesota (the "Survey"). The Survey shall show, but shall not be limited to, the area, dimensions, and location of all easements against and appurtenant to the Premises and the legal description of the Premises. The Survey shall contain certifications and seals of the Surveyor required to remove the Survey exceptions from the Title Policy.

6.    **FEASIBILITY:**

(A)    **PERIOD:** Buyer shall have a one hundred twenty (120) day period after the ~~Effective Date~~ (the "Feasibility Period") to satisfy itself of the matters contemplated below. Buyer may, at its option, extend the Feasibility Period for two (2) additional thirty (30) day periods, provided that prior to the expiration of the initial one hundred twenty (120) day period, Buyer (i) gives written notice to Seller of Buyer's intent to exercise such option to extend the Feasibility Period and (ii) deposits with the Escrow Agent the sum of Five Thousand Dollars ($5,000.00) (an "Additional Deposit") as additional Earnest Money for each of the Feasibility Period extensions. The Additional Deposit shall be non-refundable in all events, unless this transaction fails to close as a result of Seller's non-performance

2

*the date that Buyer receives a copy of the Approval Order from the Seller as described in Section 24 below.*

or non-satisfaction of any of the conditions contained herein, but shall apply to the Purchase Price at closing.

(B)    ZONING:  It is a condition of this Agreement that prior to the expiration of the Feasibility Period Buyer shall have received all approvals, permits or variances deemed necessary by Buyer for its Use of the Premises (the "Governmental Approvals"). Buyer, at Buyer's cost, shall pursue diligently to completion any applications and processing required for the Governmental Approvals. If reasonably required by the applicable governmental authority, Seller agrees to sign the necessary documents to permit the rezoning or issuance of permits in accordance with Buyer's intended Use thereof..

(C)    ADDITIONAL CONTINGENCIES:  During the Feasibility Period Buyer may, but shall not be required to (i) determine whether utility connections for water, sanitary sewer, storm sewer, gas, telephone and electrical service are located in a public street or right of way or other form of public utility easements on or adjoining the Premises and are available for the Use of the Premises without further cost to Buyer other than normal and usual costs of connection to such utilities; (ii) obtain all necessary governmental permits, licenses and approvals, including building and sign permits for the improvements in accordance with Buyer's plans and specifications; (iii) determine whether pedestrian and vehicular ingress and egress to and from the Premises to a public road or highway is satisfactory to Buyer for the Use of the Premises; and (iv) determine whether project development costs are acceptable to Buyer.

(D)    HAZARDOUS WASTE & OTHER INSPECTIONS:  Seller has no knowledge that there has been production, generation, storage, treatment or disposal of any toxic or hazardous waste or substance of any kind on the Premises or that any hazardous or toxic materials were used in the construction of any improvements thereon. During the Feasibility Period and with 48 hours advance written notice to Seller (which written notice shall identify the nature and the scope of the investigation and testing, the identity of the party or parties who or which will be conducting the same, and the purpose or purposes therefor) Buyer, at Buyer's sole cost and expense, shall have the right, but not the obligation, to cause an Environmental Audit to be conducted by an engineering firm satisfactory to Buyer (the "Audit") and to otherwise enter upon the Premises at reasonable times, and subject to the rights of tenants under current leases, to perform the Audit, make surveys, and conduct other studies thereof, provided that no building or other improvements shall be disturbed. Buyer shall not permit any mechanic's or materialmen's liens or any other liens to attach to the Premises by reason of the Audit or the performance of any other work or the purchase of any materials by Buyer or any other party in connection with any studies or tests conducted by or for Buyer. Buyer shall take all reasonable actions and implement all reasonable protections necessary to ensure that all actions taken in connection with the investigations and inspections of the Premises, and all equipment, materials and substances generated, used or brought onto the Premises pose no material threat to the safety of persons or the environment and cause no damage to the Premises or other Premises of Seller, tenants or other persons.  Buyer shall pay all costs and expenses of such investigations and testing.  Buyer shall deliver to Seller copies of all investigation and test reports, results, and data, and Buyer shall immediately and forthwith repair all damages to the Premises caused by or occurring during Buyer's investigation and testing and restore and return the Premises to substantially the same condition as existed prior to such entry, at Buyer's cost and expense, unless Buyer closes on the purchase of the Premises. Seller shall have no liability or responsibility for any activities of Buyer upon the Premises and Buyer shall indemnify and hold harmless Seller, his heirs, personal representatives, successors and assigns from and against any and all claims, liabilities and assertions of liens arising out of the activities of Buyer or its agents, contractors or representatives. The indemnity provisions of this subsection (D) shall survive the closing or termination of this Agreement.

(E)    TERMINATION:  In the event that during the Feasibility Period, as such may be extended, Buyer in its sole discretion, determines for any reason that the Premises is not suitable for Buyer's intended Use or is otherwise not satisfactory to Buyer, Buyer may, prior to expiration of the Feasibility Period, terminate the Agreement by written notice to Seller and the Escrow Agent and receive return of its Initial Earnest Money and Seller shall be entitled to receive from Escrow Agent and retain the Additional Deposit, if any, and neither party hereto shall have

3

any further rights or obligations hereunder except for those that by the express terms hereof survive any termination of this Agreement. Buyer's failure to exercise its right of termination permitted under this subsection (E) on a timely basis shall be deemed a waiver thereof and the acceptance of the Premises in its then condition.

7.    **CLOSING:** The consummation of the Sale and Purchase shall be closed and the Deed as hereinafter defined) delivered to Buyer (the "Closing") at the offices of Escrow Agent upon a mutually agreeable business day within thirty (30) days of the expiration of the Feasibility Period, unless such Closing is extended by mutual agreement of Buyer and Seller. Buyer and Seller shall each use Escrow Agent to close this transaction.

At the Closing, Seller shall execute and deliver to Buyer a Limited Warranty Deed in recordable form utilizing the legal description in the attached **Exhibit "A"** and confirmed in the Survey conveying good and marketable fee simple title to the Premises, subject only to the Permitted Exceptions (the "Deed"). The parties shall also execute and deliver any other documents reasonably necessary to comply with the terms of this Agreement and the Requirements of the Title Company. Possession of the Premises, subject to the rights of tenants, shall be delivered to Buyer at Closing. Buyer shall deliver to Seller at Closing the consideration required pursuant to Section 2 above in immediately available funds.

8.    **COSTS:** Seller will be responsible for the following costs: Seller's attorneys' fees, preparation of the Deed, the cost of the Title Commitment, search fee, the documentary stamp tax for recording the deed and expenditures necessary to remove the Objections, provided that Buyer shall be solely responsible for the costs obtaining any special form or extended coverage, for the costs of all endorsements, for any waiver of the creditor's rights exclusions and arbitration provisions. Buyer will be responsible for the cost of any tests, the Audit and mortgage tax and recording costs required for recording any Mortgage, the recording fee for recording the Deed, and Buyer's attorneys' fees and the Survey.

9.    **BROKER COMMISSIONS:** Seller and Buyer do hereby warrant that there are no brokers involved in this transaction other than Diversified Acquisitions, Inc. and Mid-America Real Estate Minnesota, LLC (the "Brokers") and Seller agrees to pay a commission to the Brokers at Closing per the terms of a separate agreement.

10.    **PRORATION:** Taxes and special assessments for the current year and outstanding utility charges, if any, shall be prorated as of the Closing date.    Unpaid prior year taxes and special assessments, if any, including any interest and penalties, shall be paid by the Seller at Closing. This obligation of the parties shall survive the Closing.

11.    **REPRESENTATIONS AND WARRANTIES.** Buyer makes the following representations and warranties:

(a)    Buyer is a duly organized and validly existing limited liability company, in good standing under the laws of the state of its formation and duly authorized and qualified to do business. Buyer has all requisite power and authority to execute and deliver, and to perform all of its obligations under, this Agreement;

(b)    This Agreement and all agreements, instruments and documents herein provided to be executed or to be caused to be executed by Buyer are duly authorized, executed and delivered by and are binding upon Buyer and each member of Buyer;

(c)    The person signing this Agreement is duly authorized to execute this Agreement on behalf of Buyer and to do all things, take all actions, and to execute and deliver all documents, agreements, instruments, certificates and other writings necessary to consummate the transactions contemplated in this Agreement;

(d)    The execution of this Agreement and the consummation of the transactions contemplated hereby do not and will not constitute a default under any agreement to which Buyer is a party;

4

(e)     Buyer is a knowledgeable, experienced and sophisticated Buyer of real estate and that, except as expressly set forth in this Agreement, it is relying solely on its own expertise and that of Buyer's consultants in purchasing the Premises and shall make an independent verification of the accuracy of any documents and information provided by Seller. Buyer will conduct such inspections and investigations of the Premises as Buyer deems necessary, including, but not limited to, the physical and environmental conditions thereof, and shall rely upon same. By failing to terminate this Agreement prior to the expiration of the Feasibility Period, Buyer acknowledges that Seller has afforded Buyer a full opportunity to conduct such investigations of the Premises as Buyer deemed necessary to satisfy itself as to the condition of the Premises and the existence or non-existence or curative action to be taken with respect to any condition on or at the Premises, and will rely solely upon same and not upon any information provided by or on behalf of Seller or its agents with respect thereto, other than such representations, warranties and covenants of Seller as are expressly set forth in this Agreement; and

Each representation and warranty of Buyer contained in this Agreement shall be true and accurate as of the date hereof and shall be deemed to have been made again at and as of Closing and shall then be true and accurate in all material respects. Buyer agrees to indemnify and hold harmless Seller, his heirs, personal representatives and assigns, against and in respect of any and all damages, losses, liabilities, costs and expenses of whatever kind or character, including, without limitation, reasonable attorney's fees, which arise out of or result from the breach or violation of any of the representations, warranties, covenants, or agreements made in this Agreement by Buyer.

12.     **DEFAULT:** If Seller fails or refuses to comply with this Agreement, Buyer shall have the right to cancel this Agreement, recover the Initial Earnest Money and Additional Deposit, if any, and exercise any other rights available to Buyer at law or equity, including specific performance. In the event Buyer fails or refuses to comply with this Agreement, Seller shall have the right to cancel this Agreement and (i) retain the Initial Earnest Money and Additional Deposit, if any, as liquidated damages as its sole and exclusive remedy.

13.     **NOTICES:** Any notice to Buyer or Seller hereunder shall be deemed received if sent to the address given below by actual delivery, by electronic transmission such as facsimile or e-mail or by overnight delivery through a nationally recognized courier service, properly addressed with delivery charges prepaid.

| | |
|---|---|
| If to Seller: | **Sky Ventures, LLC** |
| | **5425 Boone Avenue North** |
| | **New Hope, MN  55428** |
| | **Attention: Mr. Barry Zelickson** |
| With a copy to: | |
| | **Winthrop & Weinstine, P.A** |
| | **Capella Tower, Suite 3500** |
| | **225 South Sixth Street** |
| | **Minneapolis, MN  55402** |
| | **Attention: Timothy M. Barnett, Esq.** |
| If to Buyer: | **Mr. Charles P. Vaughn, Jr. – Chief Manager** |
| | **Sherman Partners, LLC** |
| | **c/o Cherry and Associates** |
| | **209 29th Avenue North** |
| | **Suite 150** |
| | **Nashville, TN  37203** |

5

14.     **CONDEMNATION:** Unless specifically excepted herein, Seller warrants that it has no knowledge of nor has received any notification from any governmental agency or other institution concerning any pending public improvement or of the proposed exercise of, or offer to purchase under, the power of eminent domain relative to any part of the Premises or requiring any alteration or other work thereon that has not been satisfactorily made, which warranty shall survive the delivery of the Deed hereunder. If all or any part of the Premises shall be condemned or otherwise taken prior to Closing through any eminent domain proceeding or deed in lieu thereof, then Buyer may elect (i) to terminate this Agreement and have the Earnest Money refunded, relieving both Seller and Buyer of all duties and/or obligations hereunder, or (ii) take the Premises under the terms of this Agreement with no abatement of the Purchase Price and require Seller to assign to Buyer all of Seller's interest in and to any such condemnation award. Buyer's election shall be made in writing to Seller at any time within ten (10) days of delivery of Seller's Written Notice of any such taking to Buyer. Buyer's failure to make a timely election hereunder shall be deemed an election of item (ii) herein.

15.     **CASUALTY:** In the event all or any part of the Premises shall be damaged by fire or other casualty prior to Closing then Buyer may elect (i) to terminate this Agreement and have the Earnest Money refunded, relieving both Seller and Buyer of all duties and/or obligations hereunder, or (ii) take the Premises under the terms of this Agreement and require Seller to assign to Buyer all of Seller's interest in and to any insurance proceeds from insurance covering said casualty. Buyer's election shall be made in writing to Seller at any time within ten (10) days of delivery of Seller's written Notice of any such casualty to Buyer. Buyer's failure to make a timely election hereunder shall be deemed an election of item (ii) herein.

16.     **RIGHT TO ENTER PREMISES:** During the Feasibility Period, Buyer and its agents and shall have the right to enter upon the Premises in the manner and upon the terms set forth in Section 6 above.

17.     **NON-FOREIGN SELLER:** The parties agree to comply with the requirements of Section 1445 of the Internal Revenue Code as to dispositions of United States real Premises interests by "foreign persons" (as defined therein).

18.     **SUCCESSORS AND ASSIGNS:** This Agreement shall inure to the benefit of and be binding upon the parties hereto and their assigns. At the election of Buyer, this transaction shall be closed in the name of and the Deed delivered to its nominee or assigns, provided such assignment shall not release Buyer from its obligations hereunder. As used herein, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

19.     **ENTIRE AGREEMENT:** This Agreement supersedes any prior contemporaneous agreements, negotiations, representations and proposals, written or oral, relating to the transaction described herein. No other agreement, unless in writing and signed by an authorized representative of the party to be charged, will modify or add to the terms herein.

21.     **MISCELLANEOUS.** All the parties to this Agreement have participated fully in the negotiation and preparation hereof; and accordingly, this Agreement shall not be more strictly construed against any one of the parties hereto. In the event any term or provision of this Agreement is determined by an appropriate judicial authority to be illegal or otherwise invalid, such provision shall be given its nearest legal meaning or be construed as such authority determines, and the remainder of this Agreement shall be construed to be in full force and effect. All exhibits attached hereto are incorporated in, and made a part of, this Agreement. Time is of the essence of this Agreement. In the event any time period specified in this Agreement expires on a Saturday, Sunday or bank holiday on which national banks in Columbia, Tennessee are closed for business, then the time period shall be extended so as to expire on the next business day immediately succeeding such Saturday, Sunday or bank holiday. This Agreement

6

may be executed in two or more counterparts, without the necessity of all signatures being affixed to any one such counterpart so long as all signatures appear on the counterparts collectively, and each such counterpart shall be deemed an original and all of which shall constitute one and the same instrument. This Agreement may be executed and delivered by telefacsimile transmission or other electronic means pursuant to the Tennessee Uniform Electronic Transactions Act and the electronic signature of a party, or a signature transmitted or delivered by electronic means, shall be binding upon such party as fully as though such signature was executed and delivered in person.

23.    **GOVERNING LAW.** This Agreement is made pursuant to and shall be governed by and construed in accordance with the substantive laws of the State of Minnesota and without regard to its laws concerning choice of law. The parties agree that any legal action brought by either party hereto in connection with this Agreement shall be maintained in the Minnesota state court having jurisdiction over such claim sitting in such district and each party hereby irrevocably submits to the jurisdiction of said courts.

24.    **BANKRUPTCY COURT APPROVAL.** Buyer and Seller agree to reasonably cooperate in seeking entry of an order by the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court") approving this Agreement (the "Approval Order"). This Agreement is expressly contingent upon entry of an Approval Order by the Bankruptcy Court. If the Bankruptcy Court does not enter an Approval Order, this Agreement shall be null and void *ab initio* and the Buyer and Seller shall be restored to their positions, rights and interests the same as they had maintained immediately prior to the Effective Date hereof (as defined hereinbelow). *within ninety (90) days of the Effective Date of this Agreement.*

25.    **THIS INSTRUMENT,** having been first signed by Buyer, shall be regarded as an offer to buy from the Seller and is open for acceptance until the 23rd day of May, 2014. For purposes of the calculations of any time periods set forth in this Agreement, the Agreement shall be deemed to have been entered into on the latest of the dates set forth below, or the date last initialed, whichever is later (the "Effective Date").

EXECUTED by Seller this _____23rd_____ day of ___May___, 2014.

SKY VENTURES, LLC, a Delaware limited liability company,

By: BFI Ventures, LLC, a Minnesota limited liability company and sole manager of Sky Ventures, LLC

By: _____
     Leo J. Engler, President

Date: _____5/23/14_____

EXECUTED by Buyer this _____22nd_____ day of ___May___, 2014.

SHERMAN PARTNERS, LLC, a Delaware limited liability company,

By: _____ – Chief Manager

Date: 5/22/14

9077303v3

8

## Exhibit "A"
(Legal Description)

Lot 4, except the West 96.99 feet thereof, Block 1, Hanson's Third Addition, and the East 40.00 feet of the West 96.99 feet of Lot 4, Block 1, Hanson's Third Addition, McLeod County, Minnesota

Abstract Property

Property Identification No. 23-164-0040

9

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                              Chapter 11

Sky Ventures, LLC                                   Case No. 14-42107-MER

                         Debtor.

---

**ORDER APPROVING MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF INTERESTS, LIENS, MORTGAGES, PRIVILEGES AND ENCUMBRANCES PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363**

The Court has considered the *Motion for Authority to Sell Property Free and Clear of Interests, Liens, Mortgages, Privileges and Encumbrances Pursuant to Bankruptcy Code Sections 105 and 363* (the "Motion")[1] filed by Sky Ventures, LLC (the "Debtor"). Through the Motion, the Debtor seeks the Court's authorization to sell real property located at 964 Highway 15 South, Hutchinson, McLeod County, Minnesota described more fully on Exhibit "A" to the Agreement of Purchase and Sale ("Purchase Agreement") attached to the Motion as Exhibit 1, together with all improvements thereon and all rights, appurtenances, easements, and privileges thereto, including all right, title and interest of the Debtor in and to any streets, rights of way, alleys, strips or gores of land adjoining the real property and any award made or to be made in lieu thereof ("Property") to Sherman Partners, LLC ("Sherman Partners") free and clear of all interests, liens, mortgages, privileges and encumbrances according to the terms and conditions described in the Motion and the Purchase Agreement executed by the Debtor and Sherman Partners.

---

[1]      All of the capitalized terms used in this Order, unless otherwise indicated, shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY FOUND AND CONCLUDED, that:**

A.    On May 14, 2014 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

B.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 Chapter 11 of the Bankruptcy Code.  U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Determination of the Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). the statutory predicates for the relief requested herein are Sections 105(a), 363, 365 and 1146(c) of the Bankruptcy Code and Rules 2002, 6004, 6006, 9006 and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.    Proper, timely, adequate and sufficient notice of the Motion and has been given under the circumstances of this case and no other or further notice of the Motion, of the hearing regarding the Motion (the "Sale Hearing"), or of the entry of this Order is required.

E.    The sale of the Debtor's property (the "Property") as contemplated by the Purchase Agreement with Sherman Partners is fair and reasonable and the negotiations of the Purchase Agreement were conducted in good faith and at arm's length.  The Property includes real property described in the Purchase Agreement attached hereto as Exhibit "A."

F.    A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including (i) all parties, if any, who are known to claim a property interest in, or any lien, claim, encumbrance or adverse interest in the Property; (ii) all governmental taxing authorities who have or may have a Claim (as defined by the Bankruptcy Code) against the Debtor; (iii) all creditors and other parties who have filed a notice of appearance in this case; and (iv) the United States Trustee for the District of

Minnesota.

G.      The Debtor has authority to execute, deliver and perform under the Purchase Agreement and all other documents contemplated thereby and to consummate the transaction as set forth herein.

H.      The sale is in the best interests of the Debtor, its creditors and its estate. The Debtor has demonstrated and proven to the satisfaction of the Court good, sufficient and sound business purpose and justification for the transaction and entry of this Order.  The entry of this Order and the approval of the Purchase Agreement are necessary and appropriate to maximize the value of the Debtor's estate.  After consideration of the circumstances described in the Motion, the Court has determined that the Purchase Agreement presents the best opportunity for the Debtor to realize the highest distribution possible to creditors.

I.      The purchase price set forth in the Purchase Agreement constitutes fair and reasonable consideration and reasonably equivalent value for the Property.  The purchase price is the highest and best price obtained for the Property after adequate marketing.

J.      The Debtor has good and marketable title to the Property, and accordingly, the transfer of the Property to Sherman Partners will be a legal, valid and effective transfer of the Property.

K.      The transfer of the Property, as set forth in more detail in the Purchase Agreement: (i) is or will be a legal, valid and effective transfer of property of the Debtor's estate to Sherman Partners, and (ii) vests or will vest in Sherman Partners all right, title, and interest of the Debtor in and to the Property free and clear of all liens, claims, encumbrances, adverse interests, liabilities and obligations (to the fullest extent permitted by the Bankruptcy Code).

L.      No entity asserts a lien, claim, encumbrance or adverse interest (to the fullest

3

extent permitted by the Bankruptcy Code and other applicable law) in the Property.

M.      All of the actions taken by Sherman Partners, the Debtor and their respective officers, employees, counsel and other professionals in connection with the Purchase Agreement, the Motion and this Order have been taken in good faith, and Sherman Partners is a good faith purchaser within the meaning of 363(m) of the Bankruptcy Code because, among other reasons:

(a)      Sherman Partners is not an "insider" of the Debtor, as the term is defined in the Bankruptcy Code;

(b)      Sherman Partners is unrelated to the Debtor;

(c)      The Purchase Agreement was negotiated, proposed and entered into by the Debtor and Sherman Partners without collusion, in good faith, and from arm's-length bargaining positions;

(d)      The purchase price was not controlled by an agreement between potential and actual bidders within the meaning of Section 363(n) of the Bankruptcy Code;

(e)      Neither Sherman Partners nor the Debtor has engaged in any conduct that would cause the transactions contemplated by the Purchase Agreement to be avoided as contemplated in Section 363(n) of the Bankruptcy Code; and

(f)      In the absence of a stay pending appeal, Sherman Partners will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing and consummating the transaction as contemplated by the Purchase Agreement at any time after the entry of this Order, and accordingly, such closing in the face of an appeal will not deprive Sherman Partners of its status as a good faith purchaser.

N.      Except as otherwise provided in this Order and/or the Purchase Agreement, neither Sherman Partners nor any of its successors, assigns, or affiliates is assuming any of the liens, claims, encumbrances, adverse interests, obligations or liabilities against the Debtor's Property.

O.      There is no common identity among the Debtor and Sherman Partners.

P.  **No bulk sales law** or any similar law applies in any way to the transfer of the Property under the Purchase Agreement.

Q.  Except as otherwise provided in this Order or under applicable state or local statute or regulation governing transfer taxes, the transfer of the Property to Sherman Partners does not and will not subject Sherman Partners or any of its successors or assigns to any liability for claims against the Debtor by reason of such transfer under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transaction.

**IT IS THEREFORE:**

1.  **ORDERED**, that the Motion is **GRANTED as modified herein**; and it is further

2.  **ORDERED**, that all capitalized terms not defined herein shall have the meaning given to them in the Motion, and it is further

3.  **ORDERED**, that the findings of fact set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014 and the fact that the findings of fact and conclusions of law set forth herein are not in a separate document shall not affect the relief granted herein, this Order's binding effect, or the right of any party to appeal this order or the time within which an appeal may be taken. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed; and it is further

4.  **ORDERED**, that any objections to the Motion or the relief requested therein that

5

have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

5.      **ORDERED**, that all of the terms and conditions of the Purchase Agreement hereby are approved in all respects, and the sale of the Property pursuant to the Purchase Agreement is hereby authorized under Sections 363(b) and (f) of the Bankruptcy Code. The omission in this Order of specific reference to any provision of the Purchase Agreement shall not impair or diminish the efficacy, propriety, or approval of such provision, and it is further

6.      **ORDERED**, that, by the issuance of this Order, the Debtor is authorized and directed to execute and deliver, and empowered to fully perform under, consummate and implement, the Purchase Agreement and all additional amendments, instruments, and documents that may by reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may reasonably be requested by Sherman Partners for the purpose of assigning, transferring, granting, conveying and conferring to Sherman Partners, relating to Sherman Partners possession of the Property; and it is further

7.      **ORDERED**, that, pursuant to Sections 363(f) and 105(a) of the Bankruptcy Code, title to the Property shall be transferred to Sherman Partners at the Closing (as defined in the Purchase Agreement) in accordance with the terms and conditions of the Purchase Agreement (or thereafter as provided therein), free and clear of all liens, claims, encumbrances, adverse interests, liabilities and obligations (to the fullest extent permitted by the Bankruptcy Code and applicable law) whether or not incurred in this Chapter 11 case**;** and it is further

8.      **ORDERED**, that this Order shall be binding upon the Debtor, its successors and assigns or in any case under Chapter 7 of the Bankruptcy Code to which this case may be converted, and any affected third parties, including without limitation, all persons and entities

6

asserting liens, claims, encumbrances, adverse interests, liabilities, and obligations (to the fullest

extent permitted by the Bankruptcy Code and other applicable law) in the Debtor's estate or the

Property and all other persons and entities, including without limitation, filing agents, filing

officers, title agents, title companies, recorders or mortgages, recorders of deeds, registrars of

deeds, administrative agencies, governmental departments, secretaries of state, federal, state and

local officials, and all other persons or entities who may be required by operation of law or by

the duties of their office or contract to accept, file, register, or otherwise record or release any

documents or instruments, or who may be required to report to or insure title or state of title in

or to the Property. Each and every federal, state, and local governmental agency or

department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transaction including, without limitation, documents and

instruments for recording in any governmental agency or department required to transfer the

Property to Sherman Partners, and the county and state offices wherein termination statements

under the Uniform Commercial Code are authorized to be filed; and it is further

9.      **ORDERED**, that, except as provided herein and/or the Purchase Agreement,

neither Sherman Partners nor its successors and assignees, or any of its affiliates shall have any

liability, duty or responsibility for any liens, claims, encumbrances, adverse interests, liabilities

or obligations (to the fullest extent permitted by the Bankruptcy Code and other applicable law)

against the Debtor or any of the Debtor's predecessors or affiliates of any kind or character,

whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or

contingent, under the laws of the United States, any state, territory, or possession of the United

States or the District of Columbia, based on any theory of law, including without limitation, any

theory of successor, vicarious, or transferee liability and under no circumstances will Sherman

7

Partners be deemed a successor to or alter ego of the Debtor, for any liability or obligation whatsoever; and it is further

10.   **ORDERED**, that Sherman Partners is a purchaser in good faith of the Property and is entitled to and granted all of the protections afforded by Section 363(m) of the Bankruptcy Code.  In the absence of a stay pending appeal, Sherman Partners will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the transaction at any time after the entry of this Order and, accordingly, such Closing in the face of an appeal will not deprive Sherman Partners of its status as good faith purchaser. If the parties consummate the transaction while an appeal of this Order is pending, Sherman Partners shall be entitled to rely upon the protections of Section 363(m) of the Bankruptcy Code, absent any stay pending appeal granted by a court of competent jurisdiction prior to such consummation; and it is further

11.   **ORDERED**, that the purchase price for the Property is fair and reasonable and the transaction shall not be avoided under Section 363(n) of the Bankruptcy Code or otherwise; and it is further

12.   **ORDERED**, except as otherwise provided in this Order, that all persons are hereby enjoined from asserting, prosecuting or otherwise pursuing any liens, claims, encumbrances, adverse interests, liabilities or obligations (to the fullest extent permitted by the Bankruptcy Code and other applicable law) against the Property, Sherman Partners, any of its successors or assigns, or any of their affiliates, agents, officers, directors, members, partners, counsel, or advisors, and form recovering any Claim such person had, has or may have against Sherman Partners, or any of its affiliates, agents, officers, directors, members, partners, counsel, or advisors in connection with the negotiation of, or any agreements contained in, the Purchase Agreement or the transactions contemplated by the Purchase Agreement or this Order; and it is

further

13.    **ORDERED**, that except as otherwise provided in this Order, from and after entry of this Order, the Debtor, each party in interest in this case, and each other party that was provided notice of the Motion (and each of their respective successors and assigns) hereby fully and forever releases, relieves, waives, relinquishes, and discharges Sherman Partners and its employees, agents, counsel, advisors, subsidiaries, affiliates, successors and assigns from, against and with respect to any and all actual or potential demands, claims, actions, causes of action (including derivative causes of action) suits, assessments, liabilities, losses, costs, damages, penalties, charges, expenses, and all other forms of liability whatsoever, in law or equity, whether asserted or unasserted, known or unknown, foreseen or unforeseen, now existing or hereafter arising that any such person had, now has or may hereafter have relating in any way to the Debtor or its estate based in whole or in part upon any act, omission, or other occurrence taking place on or prior to the Closing date, but expressly excluding any rights or obligations expressly set forth in the Purchase Agreement and this Order; and it is further

14.    **ORDERED**, that this Court retains jurisdiction to: (i) enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto and any waivers and consents thereunder, (ii) compel delivery of the Property to Sherman Partners, (iii) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, and (iv) interpret, implement and enforce the provisions of this Order; and it is further

15.    **ORDERED**, that the stay provided in Federal Rule of Bankruptcy Procedure 6004(h) is waived and it is further

16.    **ORDERED** that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order; and it is further

9

17.    **ORDERED** that this Court hereby authorizes the Debtor to pay the real estate commission incident to the sale to Sherman Partners in an amount of seven percent (7%) of the sales price.


Dated:                                    _____
                                          Michael E. Ridgway
                                          Judge of U.S. Bankruptcy Court